# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RICKY KAMDEM-OUAFFO

_____

Write the full name of each plaintiff.

**19 ᴄᴠ CV 9943**

_____
(Include case number if one has been assigned)

Do you want a jury trial?

☒ Yes    ☐ No

-against-

BALCHEM CORPORATION, GIDEON OENGA, ~~BOB MINIGER, RENEE McCOMB, THEODORE~~ HARRIS, JOHN KUEHNER, TRAVIS LARSEN, ~~MICHAEL SESTRICK, JOHN/JANE DOES~~

_____

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

# EMPLOYMENT DISCRIMINATION COMPLAINT

| NOTICE |
| --- |
| The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2. |



## I.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Ricky | | Kamdem-Ouaffo | |
|---|---|---|---|
| First Name | Middle Initial | Last Name | |

86 Bayard Street #  381

Street Address

| Middlesex | NJ | 08903 |
|---|---|---|
| County, City | State | Zip Code |

| 732 763 8622 | rickykamer@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:  **Balchem Corporation**

Name

52 Sunrise Park Road

Address where defendant may be served

| New Hampton | NY | 10958 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:  **See Additional Complaint Pages Attached For All Other Defendants**

Name

Address where defendant may be served

| | | |
|---|---|---|
| County, City | State | Zip Code |

Page 2

Defendant 3:

| | |
|---|---|
| **Name** | |
| **Address where defendant may be served** | |
| **County, City** | **State**      **Zip Code** |

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

**Balchem Corporation**

Name

**86 Bayard Street # 381**

Address

| New Hampton | NY | 10958 |
|---|---|---|
| County, City | State | Zip Code |

## III.    CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race: _____

☐ color: _____

☒ religion: Muslim Creed/Religion and Plaintiff's Practice/Observance thereof

☐ sex: _____

☐ national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

**Tortuous Interferences** _____

## IV.   STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☒  did not hire me

☒  terminated my employment

☒  did not promote me

☐  did not accommodate my disability

☒  provided me with terms and conditions of employment different from those of similar employees

☒  retaliated against me

☒  harassed me or created a hostile work environment

☒  other (specify):    Tortuous Interferences

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Please see Additional Complaint Pages attached.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

    ☒  Yes (Please attach a copy of the charge to this complaint.)

        When did you file your charge?   See Complaint ATTACHMENT A

    ☐  No

Have you received a Notice of Right to Sue from the EEOC?

    ☒  Yes (Please attach a copy of the Notice of Right to Sue.)

        What is the date on the Notice?   07/23/2019

        When did you receive the Notice?   07/27/2019

    ☐  No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

    ☒  direct the defendant to hire me

    ☒  direct the defendant to re-employ me

    ☒  direct the defendant to promote me

    ☒  direct the defendant to reasonably accommodate my religion

    ☐  direct the defendant to reasonably accommodate my disability

    ☒  direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 10/21/2019 | | |
|---|---|---|
| Dated | | Plaintiff's Signature |
| Ricky | | Kamdem-Ouaffo |
| First Name | Middle Initial | Last Name |
| 86 Bayard Street # 381 | | |
| Street Address | | |
| New Brunswick | NJ | 08901 |
| County, City | State | Zip Code |
| 732 763 8622 | | rickykamer@gmail.com |
| Telephone Number | | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes    ☐ No

   If you do consent to receive documents electronically, submit the completed form with your
   complaint. If you do not consent, please do not attach the form.

# ATTACHMENT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

Holly M. Woodyard
State/Local Program Manager
Phone (212) 336-3766
Fax (212) 336-3625

July 23, 2019

Ricky Kamdem-Ouaffo
P.O. Box 381
New Brunswick, NJ 08903

Re: EEOC Charge Nos. 16G-2018-01267
Ricky Kamdem-Ouaffo v. Balchem Corp.

Dear Mr. Khaleel:

Our records show that the dismissal and notice of right to sue letters for the above charge was mailed by the Equal Employment Opportunity Commission (EEOC) on August 1, 2018. You stated that you never received the notices. The record also shows that due to clerical error, your dismissal and notice of right to sue letter was mailed to the wrong address.

Enclosed please find a copy of the dismissal and notice of rights to sue letter. After receipt of the notice, you will have 90 days to file a lawsuit in Federal District Court.

Sorry for any inconveniences.

Sincerely,

Holly M. Shabazz
State/Local and Tribal Program Manager

Encl: Notice of Right to Sue Letter

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

### DISMISSAL AND NOTICE OF RIGHTS

To:  **Ricky Kamdem-Ouaffo**　　　　　　　　　　From:  **New York District Office**
　　  **1 Richmond Street #2100**　　　　　　　　　　　　　　**33 Whitehall Street**
　　  **New Brunswick, NJ 08901**　　　　　　　　　　　　　　**5th Floor**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**New York, NY 10004**

| | |
|---|---|
| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2018-01267** | **Holly M. Shabazz,** **State & Local Program Manager** | **(212) 336-3643** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐　　The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐　　Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐　　The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐　　Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐　　The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☒　　The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐　　Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Kevin J. Berry,**
**District Director**　　　　　　　　　　　　　　　August 1, 2018
　　　　　　　　　　　　　　　　　　　　　　　　　(Date Mailed)

Enclosures(s)

cc:

**Attn: President**　　　　　　　　　　　　　　**Michael A. Frankel, Esq.**
**BALCHEM CORPORATION**　　　　　　　　　**Jackson Lewis P.C.**
**52 Sunrise Park Road**　　　　　　　　　　　**44 South Broadway, 14th Floor**
**New Hampton, NY 10958**　　　　　　　　　　**White Plains, NY 10601**

# ATTACHMENT B



**Division of
Human Rights**

**ANDREW M. CUOMO**
Governor

**HELEN DIANE FOSTER**
Commissioner

TO THE PARTIES:

The investigator assigned to investigate this matter is set forth below. Please contact the investigator assigned for all matters related to the investigation of the complaint attached.

Assigned Investigator:

Nadia Dawoud, Human Rights Specialist I
7-11 South Broadway, Suite 314
White Plains, New York 10601
(914) 989-3115
Nadia.Dawoud@dhr.ny.gov
(914) 285-9033 (fax)

The investigator's supervisor is the following:

Yonette Scott, Human Rights Specialist II
7-11 South Broadway, Suite 314
White Plains, New York 10601
(914) 989-3110
Yonette.Scott@dhr.ny.gov
(914) 285-9033 (fax)



**Division of Human Rights**

**ANDREW M. CUOMO**
Governor

**HELEN DIANE FOSTER**
Commissioner

January 24, 2018

Ricky Kamdem-Ouaffo
1 Richmond Street #2100
New Brunswick, NJ 08901

     Re:    Ricky Kamdem-Ouaffo v. Balchem Corporation
             Case No. 10192054

Dear Ricky Kamdem-Ouaffo:

    Please be advised that this office has received your complaint.  Your filing date is 12/28/2017.

    A copy of your complaint, and the determination, will be sent to the U.S. Equal Employment Opportunity Commission (EEOC), so that your complaint may be dual-filed under applicable federal law.  Your EEOC charge number is 16GB801267.

    To protect your rights, it is essential that the Division be notified promptly of any change in your address or telephone number.  A form is enclosed for this purpose.

    You will be contacted by the Human Rights Specialist assigned to your case when the active investigation of your complaint begins.  In the meantime, if you have any questions please call the assigned investigator at (914) 989-3120.

                         Very truly yours,

                         Linda Fenstermaker
                         Regional Director

**NEW YORK STATE**
**DIVISION OF HUMAN RIGHTS**

## <u>DO NOT JEOPARDIZE YOUR RIGHTS. COMPLETE AND RETURN</u>
## <u>THIS FORM TO THE REGIONAL OFFICE IF YOU MOVE.</u>

Return to:
**NYS Division of Human Rights**
**White Plains Regional Office**
**7-11 South Broadway, Suite 314**
**White Plains, New York 10601**
or by fax to: **(914) 285-9033**

<u>PLEASE</u> <u>PRINT</u>

Re:     Ricky Kamdem-Ouaffo v. Balchem Corporation
           CASE NO: 10192054

COMPLAINANT'S NAME: Ricky Kamdem-Ouaffo

New name, address, and/or telephone:

NAME: _____

ADDRESS: _____

_____

TELEPHONE NO: _____

DAYTIME/OTHER TELEPHONE NO: _____

I WILL BE AT MY NEW ADDRESS ON OR AFTER: _____

Please indicate below the name, address, and telephone number of a person who may be contacted and will know your whereabouts if the Division cannot locate you:

_____

_____

_____

_____

_____        _____
Date                                        Complainant's Signature



**NEW YORK STATE** | **Division of Human Rights**

**ANDREW M. CUOMO**
Governor

**HELEN DIANE FOSTER**
Commissioner

## INFORMATION FOR COMPLAINANTS
### CONCERNING COMPLAINT PROCEDURES OF
### NEW YORK STATE DIVISION OF HUMAN RIGHTS

The New York State Division of Human Rights is a State agency mandated to receive, investigate and resolve complaints of discrimination under N.Y. Executive Law, Article 15 ("Human Rights Law"). The Division's role is to fairly and thoroughly investigate the allegations in light of all evidence gathered.

## YOUR RIGHTS AND RESPONSIBILITIES AS A COMPLAINANT

- You have a right to obtain a private attorney at any time, but you are not required to do so.
- If you experience any further conduct by the Respondent that you believe is discriminatory, or is in retaliation for filing your complaint, you should immediately report it to the Division of Human Rights.
- You must notify the Division of any change in your address or telephone number. If the Division cannot contact you, we may not be able to proceed with your case. Inability to locate you will result in the eventual administrative dismissal of your case.
- Your complaint may voluntarily be withdrawn in writing by you at any time. The withdrawal form must be signed by you or your attorney (original or fax will be accepted). A withdrawal form may be obtained from the Division.
- Conciliation or settlement is possible at all points in the proceeding, and the Division may provide assistance with conciliation or settlement at the request of any party.
- You, or your attorney, may review the Division's file in this matter, and may copy by hand any material in the file, or obtain photocopies at a nominal charge. The Respondent in this matter has the same right to review the file.

## WHAT IS THE INVESTIGATIVE PROCEDURE?

The Division represents neither the Complainant nor the Respondent. The Division pursues the State's interest in the proper resolution of the matter in accordance with the Human Rights Law. Upon receipt of a complaint, the regional office will:

- Notify the Respondent(s). (A Respondent is a person or entity about whose action the Complainant complains.)
- Resolve issues of questionable jurisdiction.

INFORMATION FOR COMPLAINANTS
CONCERNING COMPLAINT PROCEDURES OF THE NYS DIVISION OF HUMAN RIGHTS
Page 2

- Forward a copy of the complaint to the U.S. Equal Employment Opportunity Commission (EEOC) or the U.S. Department of Housing and Urban Development (HUD), where applicable. Such federal filing creates a complaint separate and apart from the complaint filed with the Division, and protects your rights under federal law, although in most cases only one investigation is conducted pursuant to work-sharing agreements with these federal agencies.

- Investigate the complaint through appropriate methods (written inquiry, field investigation, witness interviews, requests for documents, investigatory conference, etc.), in the discretion of the Regional Director. The investigation of the complaint is to be objective.

- Allow the parties to settle the matter by reaching agreement on terms acceptable to the Complainant, Respondent and the Division. The Division will allow settlement from the time of filing until the matter reaches a final resolution.

- Determine whether or not there is probable cause to believe that an act of discrimination has occurred, if the matter cannot be settled prior to that Determination. The Division will notify the Complainant and Respondent in writing of the Determination.

## WHAT IS THE DIVISION'S POLICY ON ADJOURNMENTS AND EXTENSIONS?

It is the Division's policy to investigate all cases promptly and expeditiously. Therefore, you are expected to cooperate with the investigation fully and promptly. No deadlines will be extended at any time during the investigation, unless good cause is shown in a written application submitted at least five (5) calendar days prior to the original deadline.

## WHAT IS THE PROCEDURE FOLLOWING THE INVESTIGATION?

If there is a Determination of no probable cause, lack of jurisdiction, or any other type of dismissal of the case, the Complainant may appeal to the State Supreme Court within 60 days.

If the Determination is one of probable cause, there is no appeal to court. The case then proceeds to public hearing before an Administrative Law Judge. Under Rule 465.20 (9 N.Y.C.R.R. § 465.20), the Respondent may ask the Commissioner of Human Rights within 60 days of the finding of probable cause to review the finding of probable cause.

## WHAT IS A PUBLIC HEARING?

A public hearing, pursuant to the Human Rights Law, is a trial-like proceeding at which relevant evidence is placed in the hearing record. It is a hearing de novo, which means that the Commissioner's final decision on the case is based solely on the content of the hearing record. The public hearing is presided over by an Administrative Law Judge, and a verbatim transcript is made of the proceedings.

The hearing may last one or more days, not always consecutive. Parties are notified of all hearing sessions in advance, and the case may be adjourned to a later date only for good cause.

The Complainant can retain private counsel for the hearing, but is not required to do so. If Complainant is not represented by private counsel, the Division's counsel prosecutes the case in support of the complaint. Respondent can retain private counsel for the hearing, and, if Respondent is

a corporation, is required to be represented by legal counsel. Attorneys for the parties or for the Division may issue subpoenas for documents and to compel the presence of witnesses.

At the conclusion of the hearing sessions, a proposed Order is prepared by the Administrative Law Judge and is sent to the parties for comment.

A final Order is issued by the Commissioner. The Commissioner either dismisses the complaint or finds discrimination. If discrimination is found, Respondent will be ordered to cease and desist and take appropriate action, such as reinstatement, training of staff, or provision of reasonable accommodation of disability. The Division may award money damages to Complainant, including back pay and compensatory damages for mental pain and suffering, and in the case of housing discrimination, punitive damages, attorney's fees and civil fines and penalties. A Commissioner's Order may be appealed by either party to the State Supreme Court within 60 days. Orders after hearing are transferred by the lower court to the Appellate Division for review.

## WHAT IS A COMPLIANCE INVESTIGATION?

The compliance investigation unit verifies whether the Respondent has complied with the provisions of the Commissioner's Order. If the Respondent has not complied, enforcement proceedings in court may be brought by the Division.

## NOTICE PURSUANT TO PERSONAL PRIVACY PROTECTION LAW

Pursuant to the Human Rights Law, the Division collects certain personal information from individuals filing complaints and from those against whom a complaint has been filed. The information is necessary to conduct a proper investigation; failure to provide such information could impair the Division's ability to properly investigate the matter. This information is maintained in a computerized Case Management System maintained by the Division's Director of Information Technology, who is located at One Fordham Plaza, Bronx, New York, (718) 741-8365.

## GENERAL INFORMATION

For a more detailed explanation of the process, see the Division's Rules of Practice (9 N.Y.C.R.R. § 465) available on our website www.dhr.ny.gov. If you have any additional questions about the process, the investigator assigned to the case will be available to answer most questions.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

Ricky Kamdem-Ouaffo
1 Richmond Street #2100
New Brunswick, NJ 08901

EEOC Charge Number: 16GB801267
NYSDHR Case Number: 10192054

## NOTICE

This office has been informed that you filed a complaint of employment discrimination with the New York State Division of Human Rights (NYSDHR).  The purpose of this notice is to inform you of your federal rights pursuant to one or more of the statutes under which you may have filed.  Please be advised that your complaint will be investigated by the New York State Division of Human Rights, not the Federal Equal Employment Opportunity Commission (EEOC).  All questions, correspondence and status reports with regard to your case must be directed to the New York State Division of Human Rights office where your complaint was filed.

**YOUR FEDERAL RIGHTS** (if you filed under):

[X] Title VII of the Civil Rights Act of 1964, as amended — If you want to file a private lawsuit in federal district court with your own private attorney because you do not want the New York State Division of Human Rights to conduct an investigation, you may request from the EEOC a Notice of Right to Sue, 180 days after you have filed your complaint. Once the EEOC grants your request, it is only valid for ninety (90) days from the date the Notice was issued, after which your time to sue expires.  If you want the New York State Division of Human Rights to conduct an investigation, you do not need to make this request, or to contact or write either agency.  The New York State Division of Human Rights will contact you and/or advise you in the near future of their investigation and determination findings.

[ ] The Americans with Disabilities Act of 1990 (ADA) — Same as Title VII, above.

[ ] The Age Discrimination in Employment Act of 1967, as amended (ADEA) — If you want to file a private lawsuit with your own private attorney, you could do so any time after 60 days from the date you filed your complaint with the New York State Division of Human Rights.  This is only if you do not want the New York State Division of Human Rights to conduct an investigation, otherwise you do not need to do anything at this time.  The New York State Division of Human Rights will contact you and/or advise you in the near future of their investigation and determination findings.

Date: December 28, 2017

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

**EEOC REVIEW PROCEDURE**

If you want the EEOC to review the New York State Division of Human Rights
final determination, because you are not satisfied with their final findings,
you may request that the EEOC conduct a substantial weight review.  This
request must be done in writing to the EEOC and within <u>fifteen (15) days</u> from
the date you received the New York State Division of Human Rights final
determination.  Otherwise, we will adopt the state findings.

You review request must specify the reason(s) why you do not agree with the
New York State Division of Human Rights final determination.

Mail your request for substantial weight review to:

Equal Employment Opportunity Commission
Attn: State and Local Unit
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

This address is for review purposes only.  Remember, if you have questions
concerning the status of your case, you must contact the New York State
Division of Human Rights.

Date: December 28, 2017



**Division of Human Rights**

**ANDREW M. CUOMO**
Governor

**HELEN DIANE FOSTER**
Commissioner

## Notice of Important Document

| | |
|---|---|
| **ENGLISH** | **This is an important document.  If you need help to understand it, please call 888-392-3644. An interpreter will be provided free.** |
| **Español** <br><br> **Spanish** | Este es un documento importante. Si necesita ayuda para entenderlo, por favor llame al 888-392-3644. Se le proveerá un intérprete gratis. |
| 简体字 <br> **Simplified Chinese** | 这是一份重要文件。 如果您需要帮助理解此文件， 请打电话至  888-392-3644。您会得到免费翻译服务。 |
| 簡體字 <br><br> **Traditional Chinese** | 这是一份重要文件。如果您需要幫助理解此文件，請打電話至  888-392-3644。您会得到免费翻譯服務。 |
| **Kreyòl Ayisyen** <br><br> **Haitian Creole** | Sa a se yon dokiman enpòtan. Si ou bezwen èd pou konprann li, tanpri rele: 888-392-3644. Y ap ba ou yon entèprèt gratis. |
| **Italiano** <br><br> **Italian** | Il presente documento è importante. Per qualsiasi chiarimento può chiamare il numero 888-392-3644. Un interprete sarà disponibile gratuitamente. |
| 한국어 <br><br> **Korean** | 이것은 중요한 서류입니다. 도움이 필요하시면, 연락해 주십시오: 888-392-3644. 무료 통역이 제공됩니다. |
| **Русский** <br><br> **Russian** | Это важный документ. Если Вам нужна помощь для понимания этого документа, позвоните по телефону 888-392-3644.   Переводчик предоставляется бесплатно. |

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

RICKY KAMDEM-OUAFFO,

Complainant,

v.

BALCHEM CORPORATION,

Respondent.

VERIFIED COMPLAINT
Pursuant to Executive Law,
Article 15

Case No.
**10192054**

Federal Charge No. 16GB801267

I, Ricky Kamdem-Ouaffo, residing at 1 Richmond Street #2100, New Brunswick, NJ, 08901, charge the above named respondent, whose address is 52 Sunrise Park Road, New Hampton, NY, 10958 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of opposed discrimination/retaliation.

Date most recent or continuing discrimination took place is 11/28/2017.

The allegations are:

1.      (SEE ATTACHED COMPLAINT).

Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of opposed discrimination/retaliation, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

*10192054*

# New York State Division of Human Rights
## Complaint Form

RECEIVED

DEC 28 2017

NYS Division of Human Rights
White Plains Regional Office

## CONTACT INFORMATION

**My contact information:**

Name:   Ricky Kamdem-Ouaffo

Address:   301 Cozzens Court          Apt or Floor #: _____

City:   East Brunswick          State:   NJ          Zip:   08816

## REGULATED AREAS

**I believe I was discriminated against in the area of:**

[X] Employment

[ ] Apprentice Training

[ ] Public Accommodations
*(Restaurants, stores, hotels, movie theaters amusement parks, etc.)*

[ ] Education

[ ] Boycotting/Blacklisting

[ ] Housing

[ ] Commercial Space

[ ] Volunteer firefighting

[ ] Credit

[ ] Labor Union, Employment Agencies

[ ] Internship

**I am filing a complaint against:**

Company or Other Name:   Balchem Corporation

Address:   52 Sunrise Park Road

City:   New Hampton          State:   NY          Zip:   10958

Telephone Number: _____   _____   _____
            (area code)

Individual people who discriminated against me:

Name:   Renee McComb          Name:   Gideon Oenga

Title:   Senior Manager, HR          Title:   Senior Manager, R&D

## DATE OF DISCRIMINATION

**The most recent act of discrimination happened on:**    11    28    2017
                                                          month   day   year

3

## BASIS OF DISCRIMINATION

*Please tell us why you were discriminated against by checking one or more of the boxes below.*

 You do not need to provide information for every type of discrimination on this list. Before you check a box, make sure you are checking it only if you believe it was a reason for the discrimination. Please look at the list on Page 1 for an explanation of each type of discrimination.

**Please note**: Some types of discrimination on this list do not apply to all of the regulated areas listed on Page 3. (For example, Conviction Record applies only to Employment and Credit complaints, and Domestic Violence Victim Status is a basis only in Employment complaints). These exceptions are listed next to the types of discrimination below.

## I believe I was discriminated against because of my:

| | |
|---|---|
| ☐ **Age** *(Does not apply to Public Accommodations)*<br>Date of Birth: | ☐ **Genetic Predisposition** *(Employment only)*<br>Please specify: |
| ☐ **Arrest Record** *(Only for Employment, Licensing, and Credit)*<br>Please specify: | ☐ **Marital Status**<br>Please specify: |
| ☐ **Conviction Record** *(Employment and Credit only)*<br>Please specify: | ☐ **Military Status:**<br>Please specify: |
| ☐ **Creed / Religion**<br>Please specify: | ☐ **National Origin**<br>Please specify: |
| ☐ **Disability**<br>Please specify: | ☐ **Race/Color or Ethnicity**<br>Please specify: |
| ☐ **Pregnancy-Related Condition:**<br>Please specify: | ☐ **Sex**<br>Please specify: ☐ **Female** ☐ **Male**<br>        ☐ **Pregnancy**<br>        ☐ **Sexual Harassment** |
| ☐ **Domestic Violence Victim Status:**<br>*(Employment only)*<br>Please specify: | ☐ **Sexual Orientation**<br>Please specify: |
| ☐ **Familial Status** *(Does not apply to Public Accommodations or Education)*<br>Please specify: | ☒ **Retaliation** *(if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above)*<br>Please specify: Case # 10183250 and 10183369 |

**STOP** Before you turn to the next page, please check this list to make sure that you provided information **only** for the type of discrimination that relates to your complaint.

5

# EMPLOYMENT OR INTERNSHIP DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of employment or internship. If not, turn to the next page.*

**How many employees does this company have?**

a) 1-3        b) 4-14        c) 15 or more        d) 20 or more        ☒e) Don't know

**Are you currently working for the company?**

☐ **Yes**

Date of hire:        (_____ _____ _____)        What is your job title? _____
                          Month          day          year

☒ **No**

Last day of work:  ( 08 ___ 22 ___ 2016 ___)        What was your job title?  Senior Scientist
                          Month          day          year

☒ **I was not hired by the company**

Date of application: ( 11 ___ 28 ___ 2017 ___)        and 05 24 2017
                          Month          day          year            and 04 11 2017

## ACTS OF DISCRIMINATION

**What did the person/company you are complaining against do? Please check all that apply.**

☒ Refused to hire me

☐ Fired me / laid me off

☒ Did not call me back after a lay-off

☐ Demoted me

☒ Suspended me

☐ Sexually harassed me

☐ Harassed or intimidated me (other than sexual harassment)

☐ Denied me training

☒ Denied me a promotion or pay raise

☐ Denied me leave time or other benefits

☐ Paid me a lower salary than other workers in my same title

☐ Gave me different or worse job duties than other workers in my same title

☐ Denied me an accommodation for my disability

☒ Denied me an accommodation for my religious practices

☒ Gave me a disciplinary notice or negative performance evaluation

☐ Other: _____

6

**DESCRIPTION OF DISCRIMINATION** - for all complaints *(Public Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)*

*Please tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory.* **PLEASE TYPE OR PRINT CLEARLY.**   SEE ATTACHED SHEETS OF PAPERS

1)      Balchem Corporation terminated my employment on 08/22/2017 after I objected to the ban of my Muslim hooded attire from the Company while other employees were allowed to bring their and wear their non-Muslim hooded attire at the Company and during work.

2)      I was immediately suspended from the Company and subsequently terminated a couple of days after I took pictures and e-mailed to Human Resources with to raise objections a to the fact that my Muslim hooded attire was banned while other employees were bringing their non-Muslim hooded attire to work .

3)      I have been unemployed and I have been looking for work since then the termination of my employment on 08/22/2016.

4)      On several occasions, I have asked for a letter of reference from Balchem Corporation acknowledging my accomplishments during my work at Balchem but they refused to issue such a letter although it is widely known in the company that I invented a new technology that neither Balchem nor any competitor of Balchem has on the market and that the technology has a significant business potential (See EXHIBIT I).

5)      I have spoken with several potential employers and they all asked me about why my employment at Balchem was terminated and what I accomplished for the company. All of them have turned me away out of concerns for short tenure but if I had  a letter of reference  acknowledging my accomplishments  it would certainly would have helped resolve concerns potential employers have been having.

6)      In 2016, I filed complaint with the New York Division of Human Rights, under Cases # 10183250 and 10183369.  These two cases were dismissed on ground of administrative convenience because Balchem Corporation refused to produce documentary evidence that I requested through the investigator.

7)      I subsequently obtained Notices of Rights to Sue from the EEOC and I filed a lawsuit in the Federal Court and the lawsuit is still ongoing under docket $ 17-cv-02810-KMK at the US District Court for the Southern District of New York.

8)      During the course of my ongoing unemployment, I also applied for open jobs at Balchem Corporation, but they did not call for interview or give me any kind of feedback.

9)      One of the job opening I applied for was in the Research and Development in New Hampton, New York, which appeared to be the same Senior Scientist job or equivalent to the Senior Scientist I had before being wrongfully terminated (See EXHIBITS II, III, and IV).

10)     I communicated Human resources to provide me an update as to what happened to my application or why I was not called for work, but no response was given to me (See EXHIBITS V, and VI).

11)     Based on all the above, I believe that Balchem Corporation retaliated against me because I had previously opposed discrimination in the work place and had filed a complaint/lawsuit about the same.

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form.* **PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.**

# DESCRIPTION OF THE DISCRIMINATION

1)    Balchem Corporation terminated my employment on 08/22/2017 after I objected to the ban of my Muslim hooded attire from the Company while other employees were allowed to bring their and wear their non-Muslim hooded attire at the Company and during work.

2)    I was immediately suspended from the Company and subsequently terminated a couple of days after I took pictures and e-mailed to Human Resources with to raise objections a to the fact that my Muslim hooded attire was banned while other employees were bringing their non-Muslim hooded attire to work .

3)    I have been unemployed and I have been looking for work since then the termination of my employment on 08/22/2016.

4)    On several occasions, I have asked for a letter of reference from Balchem Corporation acknowledging my accomplishments during my work at Balchem but they refused to issue such a letter although it is widely known in the company that I invented a new technology that neither Balchem nor any competitor of Balchem has on the market and that the technology has a significant business potential (See EXHIBIT I).

5)    I have spoken with several potential employers and they all asked me about why my employment at Balchem was terminated and what I accomplished for the company. All of them have turned me away out of concerns for short tenure but if I had a letter of reference acknowledging my accomplishments it would certainly would have helped resolve concerns potential employers have been having.

6)    In 2016, I filed complaint with the New York Division of Human Rights, under Cases # 10183250 and 10183369.  These two cases were dismissed on ground of administrative convenience because Balchem Corporation refused to produce documentary evidence that I requested through the investigator.

7)    I subsequently obtained Notices of Rights to Sue from the EEOC and I filed a lawsuit in the Federal Court and the lawsuit is still ongoing under docket $ 17-cv-02810-KMK at the US District Court for the Southern District of New York.

8)    During the course of my ongoing unemployment, I also applied for open jobs at Balchem Corporation, but they did not call for interview or give me any kind of feedback.

9)    One of the job opening I applied for was in the Research and Development in New Hampton, New York, which appeared to be the same Senior Scientist job

or equivalent to the Senior Scientist I had before being wrongfully terminated (See EXHIBITS II, III, and IV).

**10)**    I communicated Human resources to provide me an update as to what happened to my applications or why I was not called for work, but no response was given to me (See EXHIBITS V, and VI).

**11)**    Based on all the above, I believe that Balchem Corporation retaliated against me because I had previously opposed discrimination in the work place and had filed a complaint/lawsuit about the same.

Ricky Kamdem-Ouaffo

RECEIVED
DEC 2 8 2017
NYS Division of Human Rights
White Plains Regional Office

EXHIBIT

- I -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

RICKY KAMDEM-OUAFFO,

                         Plaintiff,

      v.

BALCHEM CORPORATION, GIDEON
OENGA, BOB MINIGER and RENEE
McCOMB,

                       Defendants.

------------------------------------------------------------X

Case No. 17-cv-02810 (KMK)

## AFFIDAVIT OF MICHAEL SESTRICK IN SUPPORT OF DEFENDANT BALCHEM CORPORATION'S MOTION FOR A PROTECTIVE ORDER TO SEAL DOCUMENT

STATE OF NEW YORK        )
                           ) ss.:
COUNTY OF NEW YORK    )

MICHAEL SESTRICK, being duly sworn, deposes and says:

    1.     I hold the position of Chief Technology Officer with Balchem Corporation ("Balchem").

    2.     Balchem manufactures and sells specialized ingredients in the human nutrition and animal nutrition markets.

    3.     Balchem operates an R&D Lab at its principal office in New Hampton, New York.

    4.     Balchem's business activities rely on developing trade secret technologies to deliver effective, high quality products to its customers.

    5.     Balchem requires employees who are exposed to trade secrets and confidential business information to sign confidentiality agreements.

1

6.      Balchem employed Ricky Kamdem-Ouaffo as a Senior Scientist.

7.      On or about June 13, 2016, Mr. Kamden authored a report titled "HPDS Update (Revised)".

8.      The report details work performed on a key Balchem research and development project that remains active in Balchem's project portfolio.

9.      The report further details key findings on an advanced encapsulation system that has a potential to significantly advance Balchem's competitive position in the animal nutrition marketplace.

10.     Specifically, the new technology would allow Balchem to increase payload of active material creating a whole new class of encapsulated nutrients.

11.     The project remains active and Balchem may seek to protect the intellectual property generated in the project as either a patent or a trade secret.

12.     Publication of the data contained in the report would negatively impact Balchem's ability to protect this confidential, proprietary information and also provide the company's competitors with an unfair business advantage.

_____
                    Michael Sestrick

Sworn to and subscribed before me this _14_ day
of June, 2017.

_____
     Notary Public

MELINDA HOPKINS
NOTARY PUBLIC, State of New York
No. 31-4784820
Qualified in New York County
Commission Expires Aug. 31, 20_17_

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

RICKY KAMDEM-OUAFFO,

                           Plaintiff,

       v.

BALCHEM   CORPORATION,   GIDEON
OENGA,   BOB   MINIGER   and   RENEE
McCOMB,

                         Defendants.

----------------------------------------------------------X

Case No. 17-cv-02810 (KMK)

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2017, a true and correct copy of the foregoing Affidavit Of Michael Sestrick In Support Of Defendant Balchem Corporation's Motion For A Protective Order To Seal Document was served via ECF and U.S. Mail on Plaintiff at his address of record set forth below:

Ricky Kamdem-Ouaffo
301 Cozzens Court
East Brunswick, New Jersey  08816

_____ /s/ Michael A. Frankel _____
Michael A. Frankel

4829-1232-6218, v. 1

EXHIBIT

II

# Career Opportunities

If you are passionate about delivering excellence, and think you are a great fit with our organization, we'd love to hear from you. To apply for any of our openings, click on the desired position and complete your application online.

If you do not see a position that fits your particular skill set, please ............. to apply for general consideration.

Balchem Corporation, and it's subsidiaries, offers a competitive salary and benefits package and is an Equal Opportunity Employer.

## Balchem Corporation

Founded in 1967, Balchem provides state-of-the-art solutions and the finest quality products for a range of industries worldwide. Our Company...

New Hampton, 1001-5000 employees

Sign in to see how you're connected to Balchem Corporation

Share with friends or Subscribe!



Filter Jobs:

| - All Areas of Interest - | - All Cities - | - All States - | Search |

| Department | Position Title | City | State |
|---|---|---|---|
| Accounting/Finance | | New Hampton | NY |
| Accounting/Finance | | New Hampton | NY |
| Accounting/Finance | | Maryland Heights | MO |
| Accounting/Finance | | Maryland Heights | MO |
| Accounting/Finance | | Maryland Heights | MO |
| ANH | | WI | WI |
| ANH | | Ohio Valley | OH |
| Engineering | | Bridgeton | MO |
| Ingredient Solutions | | Bridgeton | MO |
| Ingredient Solutions | | Defiance | OH |
| Ingredient Solutions | | Los Angeles | CA |
| Ingredient Solutions | | Maryland Heights | MO |
| Internal Audit | | New Hampton | NY |
| Internal Audit | | Maryland Heights | MO |
| Operations | | Slate Hill | NY |
| Operations | | Reading | PA |
| Operations | | Defiance | OH |
| Operations | | West Ogden | UT |

| | | |
|---|---|---|
| Operations | | Marshfield | WI |
| Operations | | Sleepy Eye | MN |
| Operations | | Defiance | OH |
| Operations | | Sleepy Eye | MN |
| Operations | | Defiance | OH |
| Operations | | Marshfield | WI |
| Operations | | Lincoln | NE |
| Operations | | Lincoln | NE |
| Operations | | Lincoln | NE |
| Operations | | Lincoln | NE |
| Operations | | Lincoln | NE |
| Operations | | Lincoln | NE |
| Operations - Bridgeton | | Bridgeton | MO |
| Operations - Ogden | | West Ogden | UT |
| Operations - Sleepy Eye | | Sleepy Eye | MN |
| Operations - Verona | | Verona | MO |
| Quality | | Green Pond | SC |
| Quality Control - Bridgeton | | Bridgeton | MO |
| R & D - New Hampton | | New Hampton | NY |
| R&D | | Defiance | OH |
| R&D | | West Ogden | UT |
| Sales | | Pacific NW | CA |
| Supply Chain | | Maryland Heights | MO |
| Supply Chain | | New Hampton | NY |

ClearCompany

# Career Opportunities

If you are passionate about delivering excellence, and think you are a great fit with our organization, we'd love to hear from you. To apply for any of our openings, click on the desired position and complete your application online.

If you do not see a position that fits your particular skill set, please ___ ___ ___ to apply for general consideration.

Balchem Corporation, and it's subsidiaries, offers a competitive salary and benefits package and is an Equal Opportunity Employer.

**Balchem Corporation** 

Founded in 1967, Balchem provides state-of-the-art solutions and the finest quality products for a range of industries worldwide. Our Company. .

New Hampton, 1001-5000 employees

Sign in to see how you're connected to Balchem Corporation

Share with friends or Subscribe!

**Filter Jobs:**

- All Areas of Interest -     - All Cities -     - All States -     Search

| Department | Position Title | City | State |
|---|---|---|---|
| Accounting/Finance | | Maryland Heights | MO |
| Accounting/Finance | | New Hampton | NY |
| Accounting/Finance | | New Hampton | NY |
| Accounting/Finance | | New Hampton | NY |
| ANH | | WI | WI |
| ANH | | Ohio Valley | OH |
| Ingredient Solutions | | Los Angeles | CA |
| Ingredient Solutions | | Maryland Heights | MO |
| Ingredient Solutions | | Bridgeton | MO |
| Internal Audit | | New Hampton | NY |
| Internal Audit | | Maryland Heights | MO |
| Marketing | | Layton | UT |
| Operations | | Reading | PA |
| Operations | | West Ogden | UT |
| Operations | | Sleepy Eye | MN |
| Operations | | Marshfield | WI |
| Operations | | Marshfield | WI |
| Operations | | Lincoln | NE |

| Job | Description | City | State |
|---|---|---|---|
| Operations | | Lincoln | NE |
| Operations | | Lincoln | NE |
| Operations | | Lincoln | NE |
| Operations | | Lincoln | NE |
| Operations | | Lincoln | NE |
| Operations - Bridgeton | | Bridgeton | MO |
| Operations - Ogden | | West Ogden | UT |
| Operations - Slate Hill | | Slate Hill | NY |
| Operations - Verona | | Verona | MO |
| Operatons - Ogden, UT AMT | | West Ogden | UT |
| Quality | | Green Pond | SC |
| Quality Control - Bridgeton | | Bridgeton | MO |
| Quality Control - Slate Hill | | Slate Hill | NY |
| R & D - New Hampton | | New Hampton | NY |
| R&D | | Defiance | OH |
| R&D | | West Ogden | UT |
| Sales | | Pacific NW | CA |
| Supply Chain | | Maryland Heights | MO |
| Supply Chain | | New Hampton | NY |

ClearCompany

EXHIBIT

III

# Career Opportunities

Back to Openings

Share with friends or Subscribe! 

## Senior Scientist

**Department:** R & D - New Hampton

**Location:** New Hampton, NY

Start Your Application

*Must be authorized to work in the US without need for sponsorship.*

**PRINCIPAL FUNCTION:**

Provide technical lead in product development of new generation products, supporting a wide range of Company business units. Works within the Product Development team, assigned with innovative projects and tasks. Performs bench-top research targeted towards development of new commercial products earmarked as per business unit pipeline objectives. Evaluate intellectual property potentials in relevant research areas. Maintain high standard of documentation of work including GLP/GMP. Conduct relevant reverse engineering on competitive products. Assist in sourcing of raw materials, excipients, lab equipment, and supplies. Assist in other activities within R&D Product as assigned by Supervisor. Act as a mentor to Lab Technician (s).

**ESSENTIAL FUNCTIONS:**

Provide leading role in product development, feasibility studies, formulation, liaise with plants to conduct trials.

Follow all safety policies and procedures including use of safety equipment (PPE) and equipment safeguards.

Evaluate patent literature as part of developing potential novel intellectual property for the Company.

Evaluate materials and products using methods and analytical instruments including GC/MS, GC/FID, FT-IR, Titration System, Polarimeter, DSC, Texture Analyzer, IC, PSD, Spray-Dryer, HPLC, UPLC, and USP Dissolution Systems, etc.

Conduct physical tests to characterize the particle size distribution, the flowing property, and the density of raw and encapsulated products.

Conducts reverse engineering of competitive products, and provide innovation ideas for product development.

Liaise with business units including sales to understand customer product issues and future product development opportunities.

Maintain accurate record of all analyses performed, documenting test results in laboratory notebooks and/or electronically as required by GLP/GMP.

Prepares analytical reports following completion of studies and review with Supervisor.

Maintain clean general laboratory and work areas.

Ability to work in a fast paced environment and to meet timelines.

Perform other related duties as assigned by the supervisor.

**QUALIFICATIONS:**

Minimum MS degree in Chemistry or equivalent. Ph.D. degree preferred. At least 5-7 year-work of wide product development experience in industry, particularly R&D Lab environment. Previous experience in pharmaceutical or food industry is preferred. The successful candidate will have experience with characterization tools including GC, DSC, GC/MS, HPLC, PSD, UPLC, Texture Analyzer, DSC, IC, and Titration instruments. Experience with materials used in foods and fine chemicals industry is useful.

jb-1014@balchem.hrmdirect.com

ClearCompany

EXHIBIT

IV

Gmail - Thank you for your interest in Balchem Corporation

M Gmail

Ricky Kam <rickykamer@gmail.com>

## Thank you for your interest in Balchem Corporation
1 message

**Balchem Corporation** <do_not_reply@clearcompany.com>
Reply-To: do_not_reply@clearcompany.com
To: rickykamer@gmail.com

Tue, Apr 11, 2017 at 3:23 PM

Thank you for your interest in Balchem Corporation.  At this time, we are reviewing all resumes/applications and if interested, we will contact you directly to schedule an initial phone screen.

We wish you well in your job search!

Sincerely,

Balchem HR

 Gmail

Ricky Kam <rickykamer@gmail.com>

## Thank you for your interest in Balchem Corporation
1 message

**Balchem Corporation** <do_not_reply@clearcompany.com>
Reply-To: do_not_reply@clearcompany.com
To: rickykamer@gmail.com

Wed, May 24, 2017 at 7:02 PM

Thank you for your interest in Balchem Corporation.  At this time, we are reviewing all resumes/applications and if interested, we will contact you directly to schedule an initial phone screen.

We wish you well in your job search!

Sincerely,

Balchem HR

Gmail - Thank you for your interest in Balchem Corporation

 Gmail

**Ricky Kam <rickykamer@gmail.com>**

## Thank you for your interest in Balchem Corporation
1 message

**Balchem Corporation** <do_not_reply@clearcompany.com>
Reply-To: do_not_reply@clearcompany.com
To: rickykamer@gmail.com

Tue, Nov 28, 2017 at 12:31 PM

Thank you for your interest in Balchem Corporation.  At this time, we are reviewing all resumes/applications and if interested, we will contact you directly to schedule an initial phone screen.

We wish you well in your job search!

Sincerely,

Balchem HR

EXHIBIT
- V -

 Gmail

**Ricky Kam <rickykamer@gmail.com>**

## Follow-Up on My Employment Applications For Balchem's Jobs.

**Ricky Kam** <rickykamer@gmail.com>
To: Renee McComb <rmccomb@balchem.com>, Roxane Depew <RDepew@balchem.com>, "Frankel, Michael A. (White Plains)" <frankelm@jacksonlewis.com>

Thu, Dec 21, 2017 at 9:31 AM

Hi,

I am writing to follow-up on my employment applications that I submitted on Balchem's Job website. So far, I submitted <u>at least three</u> Applications for Employment.

Thank you

Ricky Kamdem-Ouaffo.
Tel: 1 732 763 8622

EXHIBIT

VI

 Gmail

Ricky Kam <rickykamer@gmail.com>

## Follow-Up on My Employment Applications For Balchem's Jobs.

**Ricky Kam** <rickykamer@gmail.com>
To: Renee McComb <rmccomb@balchem.com>, Roxane Depew <RDepew@balchem.com>, "Frankel, Michael A. (White Plains)" <frankelm@jacksonlewis.com>

Fri, Dec 22, 2017 at 6:22 PM

Renee,

You have refused to provide me with an update on my employment applications that I submitted to Balchem Corporation for job openings including for job opening in the R&D for the role that I had in New Hampton, New York, before you conspired to wrongfully terminate my employment. And because you have deliberately and wantonly refused to provide me with an update, obviously because you know that Balchem unlawfully discriminated against my employment Applications in Retaliation for the fact I had previously filed EEOC Charges and a Title VII lawsuit against Balchem, I am going to file a new employment discrimination Charge with the EEOC and the New York Division of Human Rights about this, and if Balchem again shows contempt with the Federal and State Agencies and refuses to cooperate with the investigation or to comply with the laws, I will have to file a second lawsuit once the Agency proceedings close.

Thank you

Ricky K.
1 732 763 8622

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing),as applicable. This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.

Ricky Kamdem
Sign your full legal name

Subscribed and sworn before me
This 26 day of _____ 20/7

Signature of Notary Public

County: UNION          Commission expires: July 22, 2021

STEVEN T CARBERRY
Notary Public - State of New Jersey
My Commission Expires Jul 22, 2021

**Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.**

9

**From:** Ricky Kamdem-Ouaffo
P.O. Box 381
New Brunswick, NJ 08903

June 12, 2018

**To:** The Director, EEOC, New York District Office

**RE:** REQUEST FOR A SUBSTANTIAL WEIGHT REVIEW OF THE DETERMINATION/ORDER OF THE NEW YORK STATE DIVISION OF HUMAN RIGHTS IN NYSDHR CASE # 10192054;  FEDERAL CHARGE # 16GB801267 (See Enclosure I).

Director,

I am the complainant in the above referenced case. On May 31, 2018, the Regional Director of the New York Division of Human Rights ("NY DHR") issued a Determination/Order in the above referenced case (See Enclosure I).

I have reviewed the Decision and the record of the complaint that I submitted to the Division of Human Rights and I am requesting a substantial weight review of the Determination and Order of the NYSDHR on two grounds

## GROUND I

The  Division of Human Rights stated the following:

*"A review of the record shows that the Complainant has not substantiated his claim. The record includes no remarks or references to complainant's prior two complaints"* (See Enclosure I, p. 2, ¶2).

I am requesting a substantial weight review of this Determination/ Order of the NYSDHR because Complaint Paragraph 6 of the "DESCRIPTION OF THE DISCRIMINATION" that I filed with the NYSDHR specifically alleged the Following:

*"In 2016, I filed complaint with the New York Division of Human Rights, under Cases # 10183250 and 10183369. These two cases were dismissed procedure of administrative convenience because Balchem Corporation refused to produce documentary evidence that I requested through the investigator"*

1

(See Enclosure II, New York State Division Of Human Rights Complaint Form, Page 8, "*DESCRIPTION OF THE DISCRIMINATION, ¶6*")

Complaint Paragraph 7 of the "DESCRIPTION OF THE DISCRIMINATION" alleged the following:

> "*I subsequently obtained Notices of Rights to Sue from the EEOC, and I filed a lawsuit in the Federal Court and the lawsuit is still ongoing under Docket # 17-cv-02810-KMK at the US District Court for the Southern District of New York*" (SEE Enclosure II, New York State Division Of Human Rights Complaint Form, Page 8, "*DESCRIPTION OF THE DISCRIMINATION, ¶7*")

In addition to the "*DESCRIPTION OF THE DISCRIMINATION, ¶¶6-7*" alleged in the initial Complaint to specifically identify the prior two cases at the Agency level, Complainant subsequently provided the NYSDHR investigator (Investigator Dawoud), with additional documents from the prior two Agency Complaints and from the ongoing lawsuit in the Federal Court. Therefore, the NYSDHR was clearly in error in stating that "*the Complainant has not substantiated his claim. The record includes no remarks or references to complainant's prior two complaints*". And even if investigator Dawoud failed to add the supporting documents produced by Plaintiff as related to the prior two cases and the ongoing federal court case, that error must be imputed to the NYSDHR and not to the Complainant because  Complainant actually  only needed to identify the case numbers for the prior two cases so that the Division could track them in the Division's and the EEOC's systems.

In view of the Complaint's "*DESCRIPTION OF THE DISCRIMINATION, ¶¶6 and 7*", and of the NSDHR Determination/Order saying that "*the Complainant has not substantiated his claim. The record includes no remarks or references to complainant's prior two complaints*", it is undisputed that the NYSDHR was clearly an error because the Complaint filed with the NYSDHR on 12/28/2017 literally identified the prior two Agency level complaints and also the Federal Court case that resulted from the prior two prior complaints filed at the Agency levels. Accordingly, I ham hereby requesting the EEOC to reverse/Amend/overrule the Determination to the EEOC to correctly and properly credit alleged the Complainant with the prior two complaints. As a matter of Fact, the EEOC should already have the corresponding Federal Charges for those prior tow complaints.

2

## GROUND II

In addition, the NYSDHR Determination stated the following:

*"The record also shows that Respondent has a policy of issuing only neutral references for all employees. A copy of that policy is included in the record. The record further shows that it provided neutral references to prospective employers for complainant"* (See Enclosure I, p. 2, ¶2).

Complainant requested the NYSDHR to provide Complainant with a copy of the Respondent's record at the NYSDHR showing that *"Respondent has a policy of issuing only neutral references for all employees. A copy of that policy is included in the record. The record further shows that it provided neutral references to prospective employers for complainant"*. However, the NYSDHR refused to provide Complainant with a copy of the Respondent's record referred to by the NYSDHR in its Determination. Furthermore, I am not aware of any instance in which Respondent ever issued even a *"neutral reference"* to any of my prospective employers.

My prospective employers who sought references told me that when they contacted Balchem Corporation to request reference, they did not obtain any and I informed the NYSDHR of this fact. Therefore, the NYSDHR must release a copy of the Respondent showing that there is evidence that *"that it [Balchem] provided neutral references to prospective employers for complainant"*. Unless the record of the NYSDHR contains copies of the neutral references that Respondent is said to have provided to prospective employers, then the NYSDHR is also in error on this fact.

## CONCLUSIONS

Even If the record of the NYSDHR contains copies of *"neutral references"* as stated in the Determination of the Division, the Equal Employment Opportunity Act ("EEOA") DOES NOT ALLOW that an employer would use any of its SELF-MADE INTERNAL POLICIES as the basis to knowingly retaliate against an applicant for employment who had filed charge of discrimination against the said employer. Therefore, the Determination/Order of the NYSDHR is fatally flawed as a matter of law.

Furthermore, because the NYSDHR incorrectly determined that *"The record includes no remarks or references to complainant's prior two complaints"*, it naturally follows that the Determination/Order of the NYSDHR is not legally viable

3

in view of the EEOA.  The Determination/Order of the NYSDHR must therefore be reversed/Amended/Overruled its entirety.

Respectfully submitted

Ricky Kamdem-Ouaffo,

**Mailing Address**
P.O. Box 381
New Brunswick, NJ 08903
**Tel:** 1 732 763 8622

**Cc:** Linda Fenstermaker, Regional Director, NYSDHR.

**Enclosures:**

**Enclosure I:** Determination and Order of the NYSDHR on case # 10192054, Dated May 31, 2018.

**Enclosure II:** Notarized "*New York Division of Human Rights Complaint Form*" filed with the NYSDHR on Dec. 28, 2017.

4

## ANNEX TABLE OF CONTENTS OF THE COMPLAINT

**I.   DESCRIPTION OF THE TECHNICAL FORM USED FOR THIS COMPLAINT (OPTIONAL, NO ANSWER REQUIRED FROM ANY DEFENDANT ON THIS SECTION) ................................................................................ 2**

**II.   SHORT AND PLAIN STATEMENT OF THE CLAIM SHOWING THAT PLAINTIFF IS ENTITLED TO RELIEF AS TO EACH DEFENDANT, PURSUANT TO THE FED. RULE. CIV. PROC. RULE 8(a)(2) ......................................... 2**

1.   Short And Plain Statement Of The Claim Or Of The Action .............................................. 2

2.   Relevance And Assignment Of Complaints Counts As To Each Defendant ...................... 4

**III.   DESIGNATION OF THE PARTIES ............................................................ 4**

1.   PLAINTIFF ................................................................................................ 4

2.   DEFENDANTS ............................................................................. 10
   1)   Balchem Corporation ................................................................ 10
   2)   Gideon Nyabuti Oenga aka Gideon Oenga ............................................... 16
   3)   Robert T. Minger aka Bob Miniger .......................................... 24
   4)   Renee McComb ............................................................. 29
   5)   Theodore Harris aka Ted Harris, CEO, Balchem Corporation ..................... 34
   6)   John  Kuehner, VP, Balchem Corporation .................................. 41
   7)   Travis Larsen ...................................................... 47

**I.   SHORT AND PLAIN STATEMENT PURSUANT TO THE FED. CIV. PROC. RULE 8(a)(1), OF THE GROUNDS FOR THE COURT'S FEDERAL QUESTION JURISDICTION OVER THE CLAIM OR OVER THE ACTION AND PROCEDURAL HISTORY AT NEW YORK DIVISION OF HUMAN RIGHTS ("NY DHR") AND AT THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC") ................... 61**

**II.   STATEMENT OF MATERIAL FACTS IN SUPPORT OF THE CLAIM(S) FOR RELIEF ........................................................................................... 73**

1.   Balchem Corporation Did Not Show Interest In Employing Plaintiff Until After Plaintiff Had Conceptualized And Proposed A New Trade Secrets And Patentable Technology Providing Commercially Viable Solutions To The Animal And Human Nutrition Market's Needs For An Advanced Encapsulation System With Certain Technical Specifications And Performance As To The Time Of Release In The Digestive Tract, Handling During Process, And Shelf-Life Stability ................................................................... 73

2.   On Around Beginning Of January 2015, Balchem Was Not Having Success At Finding A Person With The Skills To Invent A New Encapsulation Technology For Balchem Corporation's Business, And Balchem Corporation's Management Then Communicated Plaintiff By Phone And By E-Mail  That Balchem Corporation Had reviewed Plaintiff's Resume Again And Wanted To Invite Plaintiff To Meet With In Person For Some

Conversations To See If Plaintiff Could Work With Balchem Corporation On New Technologies And Products .................................................................................................. 74

3.   Upon Learning About Balchem Corporation's Interest In New Encapsulation Technologies For An Advanced Encapsulation System, Plaintiff Conceptualized A New Trade Secrets And Patentable Technology On His Own Time And Resources, Confidentially Proposed And Presented The Same To Balchem Corporation In Faith And Trust, By E-Mail, Phone And In Person ............................................................................................................ 75

4.   Upon Seeing The Ideas And The Proposals That Plaintiff Had Conceptualized And Proposed As Solutions For A New Trade Secrets Encapsulation Technology And An Advanced Encapsulation System  Suitable For Animal And Human Nutrition Market, Balchem Corporation Became Interested In Plaintiff And Requested Plaintiff To Fill-Out Balchem Corporation's Employment Application Form ...................................................... 76

5.   Balchem Corporation's Corporation Initial Employment Offer To Plaintiff Was "*At-Will*" But The Post-Balchem-Initial-Employment Offer Negotiations And The Promises Leading to The "*Evaluation*" and "*Relocation*" Clause" Added On Top of the Balchem Corporation's Initial Employment Offer Were Binding And "*Not-At-Will*" ................................................... 78

6.   Upon Starting At Balchem Corporation In April 2015, And In A Relative Short Time, Plaintiff Was Able To Successfully Implement The New Technologies He Had Conceptualized And Proposed To Balchem Before Being Offered Employment By Balchem Corporation ....................................................................................................................... 81

7.   Plaintiff Having Had A Quick Success At Implementing The New Trade Secrets Encapsulation Technology That Plaintiff Had Conceptualized And Proposed To Balchem Prior To Being Offered Employment, Plaintiff Was Asked By Balchem Corporation's R&D Managers To Speak And Introduce The New Trade Secrets Encapsulation Technology And The Prototypes Thereof At A June  2015 Introductory Meeting Between The Analytical And Product Development Team And The New CEO Theodore Harris In The Balchem Corporation's Board Room In New Hampton, NY ............................................................... 82

8.   Having Realized That Balchem Corporation Had Not Had A Successful New Trade Secrets And Patentable Technology For Decades, Plaintiff's Work For New Encapsulation Technology Got  Early Attention  From CEO Ted Harris Which The CEO Expressed To Plaintiff Personally During a One-One Conversation In The New Hampton Cafeteria On The Second Floor .................................................................................................................... 86

9.   In Spite Of Knowing That Plaintiff Was  Successful At Supplementing The New  Trade Secrets Encapsulation Technology That Plaintiff Conceptualized And Proposed To Balchem Corporation Prior To Being Offered Employment, CEO Ted Harris's Ordered Balchem Corporation's R&D Managers To Search Plaintiff's Desk For Information On Plaintiff's Muslim Religious Practices And Items ................................................................................. 87

10.     Plaintiff Unsuccessfully Appealed  To Balchem Corporation's CEO Ted Harris To Review The Grounds For The Issuance Of Discriminatory Performance Improvement Plan ("PIP"), The Changes Of The Terms And Conditions Of Plaintiff's Employment, And The Ban Of Plaintiff's Sacred Muslim Hoodie Attire That Were Imposed On Plaintiff By Balchem Corporation On June 07, 2016, Shortly After Plaintiff Had Filed A Complaint Of Discrimination Wit Balchem Corporation Human Resources ................................................. 88

11.      In Spite Of Knowing That Plaintiff Was Successful At Implementing The New Trade Secrets  Encapsulation Technology That Plaintiff Conceptualized And Proposed To Balchem Prior To Being Offered Employment, Balchem Corporation  And Its Managers Denied Plaintiff's Application For Merit-Based Promotion Because Of Plaintiff's Muslim Religion And The Sacred Hoodie Dressing Practices Thereof During The Ramadan............................ 89

12.      In Spite of Knowing That Plaintiff Was Successful At Implementing The New  Trade Secrets Encapsulation Technology That Plaintiff Conceptualized And Proposed To Balchem Prior To Being Offered Employment, Balchem Corporation Denied Plaintiff's Appeal For Reinstatement Although Plaintiff Complained That He Had Been Terminated On Discriminatory Basis Because Of Plaintiff's Muslim Religion And The Sacred Hoodie Dressing Practices Thereof During The Ramadan .................................................................. 92

13.      In Spite of Knowing That Plaintiff Was Successful At Implementing The New  Trade Secrets Encapsulation Technology That Plaintiff Conceptualized And Proposed To Balchem Prior To Being Offered Employment Balchem Corporation, Balchem Corporation Refused To Acknowledge And Credit Plaintiff For His Work At Balchem Corporation Because Balchem Doesn't Like That Credit Be Given To A Muslim Scientist For A Project That Balchem Corporation Considers To Be A Key Project, Trade Secrets, Intellectual Property And Patent Materials ........................................................................................................................... 93

14.      Balchem Corporation Contradicted Itself  In The Response Of Balchem Corporation To Plaintiff's EEOC Complaint And In The Balchem Corporation's CTO Testimony Now Filed By Balchem Corporation In The Federal Court Disclosing And Providing Evidence Showing That Plaintiff Was Successful At Implementing The New  Trade Secrets Encapsulation Technology That Plaintiff Conceptualized And Proposed To Balchem Prior To Being Offered Employment......................................................................................... 97

15.      The Successful Implementation By Plaintiff Of The New trade secrets Encapsulation Technology That Plaintiff Conceptualized And Proposed To Balchem Prior To Being Offered Employment  By Balchem Corporation Was Documented In Laboratories Notebooks And Regularly Reported On  By Plaintiff In Writing On A Weekly, And Monthly Basis Or As Requested................................................................................................................... 99

16.      Balchem Corporation and Its Manager Co-Defendants Subjected Plaintiff To Outrageous, Extreme, Harsh  Treatment, New Terms And Conditions Of Employment Because Of Plaintiff's  Muslim Religion, Creed And The Sacred Hoodie Dressing Practices Thereof During The Ramadan ................................................................................ 99

17.      Contrary To Balchem Corporation's False Statement to NY DHR That Balchem Corporation Imposed A PIP On Plaintiff And Subsequently Terminated Plaintiff's Employment Because Of *"Ongoing Performance Failures"*, Balchem Corporation's CTO Recently Conceded In The District Court That Plaintiff Had Done Work At Balchem Corporation And Had  Successfully Implemented The New  Advanced Encapsulation Technology/System That Plaintiff Conceptualized And Proposed To Balchem Prior To Being Offered Employment, Resulting In An "Advanced Encapsulation System"  Which Balchem has Classified As "Trade Secrets", *"Intellectual Property"*, *"Confidential"* *"Patent"* Materials And That the Publication of the New Trade Secrets And Patentable Technology  *"Would Negatively Impact Balchem Corporation's Ability To Protect This Confidential, Proprietary*

*Information And Also Provide The Company's Competitors An Unfair Business Advantage"*
106

18.     Through Ongoing Unemployment, I Requested for Letter of Reference From Balchem Corporation and Its Managers To Acknowledge MY accomplishments, But My Requests Have Been Denied Although Defendants Know That Plaintiff Was Successful At Implementing The New Advanced Encapsulation Technology/System That Plaintiff Conceptualized And Proposed To Balchem Prior To Being Offered Employment, And The Defendants Chose Instead To Serve Plaintiff With Court Orders To Seal All Documents Showing Record That Plaintiff's Work At Balchem Corporation Was Of Superior, Patentable Quality108

19.     The Conditions Of The Termination Of Plaintiff's Employment Caused Plaintiff To Lose Substantial Financial Reward And The Professional Reputation That Plaintiff Deserved For The New Advanced Encapsulation Technology/System And The Creation Of An Advanced Encapsulation System That Plaintiff Conceptualized And Proposed To Balchem Prior To Being Offered Employment ................................................................................ 109

20.     The Outrageous Attacks On Plaintiff, The Outrageous Changes Of The Terms And Conditions of Employment, The Discriminatory Denial Of Employment Privileges Including Denial Of Promotions, The Discriminatory Termination of Plaintiff's Employment, And The Refusal To Refer Plaintiff For New Employment Opportunities Has Caused Severe, Extreme, Outrageous and debilitating Mental And Emotional Health Problems On Plaintiff For Which Plaintiff Has Been Medically Diagnosed And Has Been Treated For Two Years Thus Far.. 109

21.     After The Termination of Plaintiff's Employment, Balchem Corporation Opened New Positions, Hired New Scientists and Engineers, Allocated New Resources For Them To Continue Scale-Up Work On The Same New Advanced Encapsulation Technology/System That Plaintiff Conceptualized And Proposed To Balchem Corporation Prior To Being Offered Employment And Which Plaintiff Successfully Implemented At Balchem And Also Taught And Trained Other Balchem Scientists To Practice ............................................................. 110

22.     At Least One Other Former Employee Of Balchem Corporation Came Forward Anonymously On Public Website Online To Disclose Having Heard Balchem Corporation's Supervisors Talk and Demean Other Employees On Characteristics That Are Specified As Discriminatorily In Title VII and NY Statutes ...................................................................... 115

**III.     CAUSES OF ACTION** ............................................................................ **115**

    **COUNT I** ................................................................................................. **115**
        VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.
        §2000e-2(a)(1) – FAILURE OR REFUSAL TO HIRE BECAUSE OF
        PLAINTIFF'S MUSLIM 'S RELIGION AND THE PRACTICES THEREOF.... 115

    **COUNT II** ............................................................................................... **125**
        FURTHER VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
        42 U.S.C. §2000e-2(a)(1) – FAILURE OR REFUSAL TO HIRE BECAUSE
        PLAINTIFF HAD OPPOSED, MADE TITLE VII CHARGE, AND TESTIFIED
        AGAINST BALCHEM CORPORATION FOR THE BAN OF PLAINTIFF'S
        SACRED MUSLIM HOODIE ATTIRE FROM THE WORKPLACE WHILE

BALCHEM COPORATION AND ITS CO-DEFENDANTS WERE ALLOWING
OTHER EMPLOYEES TO BRING AND WEAR THEIR HOODIE ATTIRES AT
WORK AND FOR THE UNLAWFUL AND RETALIATORY SUSPENSIONS
AND DISCHARGE/TERMINATION OF PLAINTIFF'S EMPLOYMENTWITH
BALCHEM .................................................................................................. 125

**COUNT III** ................................................................................................ **135**
VIOLATIONS OF NY EXC  15 §§296(1)(a) AND 296(6):  REFUSAL TO HIRE
OR EMPLOY, AIDING,  ABETTING,  INCITING,  COMPELLING  OR
COERCING REFUSAL TO HIRE OR EMPLOY  BECAUSE OF PLAINTIFF'S
MUSLIM CREED AND MUSLIM RELIGIOUS PRACTICES THEREOF ........ 135

**COUNT IV** ................................................................................................ **145**
VIOLATIONS OF NY EXC §§296(e) AND 296(7): REFUSAL TO HIRE OR
EMPLOY, AIDING, ABETTING, INCITING, COMPELLING OR COERCING
REFUSAL TO HIRE OR EMPLOY BECAUSE PLAINTIFF HAD OPPOSED,
MADE A  CHARGE, AND TESTIFIED AGAINST BALCHEM CORPORATION
AND ITS CO-DEFENDANTS FOR THE BAN OF PLAINTIFF'S SACRED
MUSLIM HOODIE ATTIRE FROM THE WORKPLACE WHILE BALCHEM
CORPORATION AND ITS CO-DEFENDANTS WERE ALLOWING OTHER
EMPLOYEES TO BRING AND WEAR THEIR HOODIE ATTIRES AT WORK,
AND FOR THE UNLAWFUL AND RETALIATORY SUSPENSIONS AND
DISCHARGE/TERMINATION OF PLAINTIFF'S EMPLOYMENT WITH
BALCHEM ................................................................................................. 145

**COUNT V** .................................................................................................. **155**
TORTUOUS INTERFERENCE WITH /PROSPECTIVE PROFESSIONAL AND
ECONOMIC OPPORTUNITIES/ADVANTAGES ............................................. 155

**COUNT VI** ................................................................................................ **163**
FEDERAL TITLE VII AND NEW YORK Y HUMAN RIGHT LAW ("NY HRL")
"HOSTILE WORK ENVIRONMENT AND/OR  HARASSMENT, AIDING AND
ABETTING HOSTILE WORK ENVIRONMENT AND/OR HARASSMENT" OF
THE PLAINTIFF BECAUSE OF PLAINTIFF'S MUSLIM 'S RELIGION AND
THE PRACTICES THEREOF .......................................................................... 163

**IV.    DEMAND FOR RELIEF** ...................................................................... **175**

1.   DEMAND FOR RELIEF PROVIDED BY 42 U.S.C. § 2000E–5(g) ............................ 175

2.   DEMAND FOR RELIEF PROVIDED BY THE STATUTES OF THE STATE OF NEW
YORK ....................................................................................................................... 176

**V.    DEMAND FOR TRIAL BY JURY** .................................................................. **176**

**Ricky Kamdem-Ouaffo**
**86 Bayard Street, # 381**
**New Brunswick, NJ 08903**
**Tel: 1 732 763 8622**
**E-mail**: rickykamer@gmail.com

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICKY KAMDEM-OUAFFO,<br><br>       Plaintiff,<br><br>  Vs.<br><br>BALCHEM COPORATION<br>GIDEON OENGA (In Personal Capacity and in Capacity with Balchem Corporation)<br>BOB MINIGER (In Personal Capacity and in Capacity with Balchem Corporation)<br>RENEE McCOMB (In Personal Capacity and in Capacity with Balchem Corporation)<br>THEODORE HARRIS, CEO (In Personal Capacity and in Capacity with Balchem Corporation)<br>JOHN KUEHNER (In Personal Capacity and in Capacity with Balchem Corporation)<br>TRAVIS LARSEN (In Personal Capacity and in Capacity with Balchem Corporation)<br>MICHAEL SESTRICK (In Personal Capacity and in Capacity with Balchem Corporation)<br>JOHN/JANE DOES (In Personal Capacity and in Capacity with Balchem Corporation)<br>       Defendants. | **COMPLAINT**<br>Jury Trial Requested Yes**_X_** No___<br><br> |

1

Plaintiff, Ricky Kamdem-Ouaffo, by way of Complaint against Defendants , states as follows:

## I.   DESCRIPTION OF THE TECHNICAL FORM USED FOR THIS COMPLAINT (OPTIONAL, NO ANSWER REQUIRED FROM ANY DEFENDANT ON THIS SECTION)

**1)**      *"No Technical Form is required"* by the Federal Rules of Civil Procedures Rule 8(d)(1),

but Plaintiff provides a "TABLE OF THE CONTENTS OF THE COMPLAINT PLEADING" is

ANNEXED at the end of this Complaint to help each party with an upfront identification of the

Sections of the Complaint applicable to each party.

**2)**      Because this Complaint involved multiple defendants who acted either individually,

collectively or on behalf of others, each defendant is expected/required to Respond only to the

Sections of the Complaint applicable to such a defendant, unless such a defendant chooses to

respond to all allegations.

## II.   SHORT AND PLAIN STATEMENT OF THE CLAIM SHOWING THAT PLAINTIFF IS ENTITLED TO RELIEF AS TO EACH DEFENDANT, PURSUANT TO THE FED. RULE. CIV. PROC. RULE 8(a)(2)

### 1.   Short And Plain Statement Of The Claim Or Of The Action

**3)**      Balchem Corporation and its co-defendants committed unlawful employment practices

against the Plaintiff in violation of the Laws and Statutes the United States and of the State of New

York, consisting of  failure/refusal to hire against Plaintiff because of Plaintiff's Muslim

Creed/Religion, and because Plaintiff previously objected to their unlawful practices and made a

an Agency and/or court Charge/complaint against them for their unlawful employment unlawful

practices.

**4)**      Plaintiff was employee at Balchem Corporation and Balchem Corporation and its

managers/executives found out that Plaintiff had Muslim religious Practices, and upon confronting

Plaintiff bout his Muslim creed/religion Plaintiff confirmed it and had no intention of abandoning

his Muslim religious practices.

**5)**　　Subsequently acting in their bigotry, dislike, disdain and/or hatred of Plaintiff's Muslim creed, religion, and the hoodie wearing practices/tradition of Plaintiff's Muslim creed/religion, Defendants Oenga, McComb, Sestrick, Miniger, Kuehner, Larsen, and Harris misused and abused of their positions of seniority at Balchem Corporation to lie and to make false reports to Balchem Corporation about Plaintiff's Job performance, falsely charging that "*Sometime after his hire, Complainant's performance suffered, etc...*" and thereby caused Balchem Corporation to unlawfully terminate Plaintiff's employment and to blacklist and to refuse/fail to rehire Plaintiff for open positions at Balchem Corporation, including positions opened for the advancement of the a new technology Plaintiff had created and successfully implemented at Balchem Corporation.

**6)**　　Plaintiff has been unemployed and also applied for jobs including research and development jobs that Balchem Corporation posted on public website looking for the expertise that Plaintiff has or which were opened for the advancement of the inventions that Plaintiff conceptualized and successfully implemented at Balchem before being unlawfully terminated, but Balchem Corporation failed/refused to rehire and did not even call Plaintiff for interview.

**7)**　　Balchem Corporation refused/failed to rehire the Plaintiff although the project that Plaintiff developed at Balchem Corporation "*remains active in Balchem Corporation's project portfolio*", even as recently testified under oath by the CTO of Balchem Corporation, namely Mr. Michael Sestrick in and Affidavit filed in the federal Court.

**8)**　　Balchem Corporation failed/refused to rehire Plaintiff for work at Balchem Corporation and Balchem because of Plaintiff's Muslim Creed/Religion and because of the Plaintiff's protected activity against Balchem and its co-defendants for their unlawful ban of Plaintiff's Muslim hoodie attire and the termination of the Plaintiff's employment based on Plaintiff's Muslim religion/creed.

**9)** Individual defendants Oenga, Miniger, McComb, Kuehner, Larsen and Harris committed tortuous interferences with prospective professional, and economic opportunities/advantages by misusing and abusing of their positions of seniority at Balchem Corporation to lie and to make false reports to Balchem Corporation about Plaintiff's Job performance, falsely charging that "*Sometime after his hire, Complainant's performance suffered, etc...*" and thereby caused Balchem Corporation to unlawfully terminate Plaintiff's employment and to blacklist and to refuse/fail to rehire Plaintiff for open positions at Balchem Corporation, including positions opened for the advancement of the a new technology Plaintiff had created and successfully implemented at Balchem Corporation.

### 2.      Relevance And Assignment Of Complaints Counts As To Each Defendant

**10)** Defendant Balchem Corporation is held liable for all Complaint counts except Complaint COUNTS V.

**11)** Defendants Oenga, McComb, Miniger, Kuehner, Larsen, Harris are liable for all Complaint Counts  except Complaint COUNTS I and II.

### III.      DESIGNATION OF THE PARTIES

### 1.      PLAINTIFF

**12)** The Plaintiff is a citizen of the United States, residing in the State of New Jersey, with mailing address as 86 Bayard Street, # 381, New Brunswick, NJ 08903.

**13)** Plaintiff is an American Citizen who was born and brought up in the land of Cameroon.

**14)** In the Country of Cameroon where Plaintiff was born and brought up, Christianity, Islam and Traditionalist are the three main religions.

**15)** Plaintiff was brought up seeing Christian churches and Muslim centers of various denominations operating freely and peacefully throughout Cameroon while the traditionalists operate in their shrines and temples.

**16)** Plaintiff was also brought up seeing that persons of Islam, Christian or traditionalist religious practices were appointed in the high offices of the country of Cameroon and they serve their country peaceably and respected each other.

**17)** As a matter of fact, the country of Cameroon had a Muslim President before the current one who officially introduced himself to the public as a Christian.

**18)** Muslim centers and Christian churches of various denominations operate freely throughout the country where Plaintiff was born and brought up.

**19)** Plaintiff's biological family is also made up of relatives from Christian, Islam and Traditionalist religious beliefs and practices, and also of relatives who advocate and practice a little bit of each religion as they see it fit.

**20)** Plaintiff was educated in the teachings of Islam both at school and in the biological family environment.

**21)** Plaintiff of himself also read the sacred Coran.

**22)** The Plaintiff has Islam and Muslim religion practices as well as practices from other religions.

**23)** Plaintiff was born and brought up in a Country that practices the freedom of religion and as an American Citizen Plaintiff believes in and defends the freedom of religion provided in the Constitution of the United States.

**24)** Plaintiff makes his living and earn money by working in the food, beverage and pharmaceutical industries either on full-time, contract of consultant basis.

**25)**    Plaintiff also successfully developed and launched his own ingredients on the market place an example of which Plaintiff named Natural Functional Savory Flavor.

**26)**    Plaintiff learned from Balchem Corporation that there was market need for a New Trade Secrets And Patentable Technology providing commercially viable solutions to the animal and human nutrition market's needs for an advanced encapsulation system with certain technical specifications and performance as to the time of release in the digestive tract, handling during process, and shelf-life stability and that for years Balchem Corporation had tried to develop encapsulates but had not been successful.

**27)**    Upon learning about Balchem Corporation's interest in new encapsulation technologies for an advanced encapsulation system, plaintiff conceptualized a New Trade Secrets And Patentable Technology on his own time and resources, confidentially proposed and presented the same to Balchem corporation in faith and trust, by e-mail, phone and in person.

**28)**    Having seen the ideas and the proposals that Plaintiff had conceptualized and proposed as solutions for a new encapsulation technology and an advanced encapsulation system  suitable for animal and human nutrition market,  Balchem Corporation became interested in Plaintiff and requested plaintiff to fill-out Balchem Corporation's employment application form.

**29)**    Balchem Corporation made representations to Plaintiff personally and also publicly advertised on its website that Balchem Corporation was "*an Equal Opportunity Employer*" and that it would not discriminate against an employee based upon race, religion, creed, sex, age, or nationality of origin.

**30)**    Balchem Corporation made representations to Plaintiff personally and also publicly advertised on its website that Balchem Corporation was a "*Great Place To Work*"  for employees who like Plaintiff "*are passionate about delivering excellence*".

**31)**     Relying on the Balchem Corporation's representations that it was "*an Equal Opportunity Employer*" and a "*Great Place To Work*" for employees who like Plaintiff "*are passionate about delivering excellence*", Plaintiff then filled out Balchem Corporation's employment application form and returned the same to Balchem Corporation, first by fax and then by FedEx mail (See [Case 7:17-CV-02810-KMK] ECF Document # 32, pp. 57-84, EXHIBITS 013 to 023), which then subsequently to Plaintiff joining Balchem Corporation on full-time basis to implement the technology that Plaintiff had conceptualized on his own time and resources, and had confidentially proposed and presented the same to Balchem Corporation in faith and trust.

**32)**     Plaintiff brought forth this lawsuit because Plaintiff was denied promotion, pay increase and terminated from his employment at Balchem Corporation for objecting to the ban of his Sacred head-covering-hoodie Muslim attire by Balchem Corporation and its executives and managers.

**33)**     Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "key performance objectives", Plaintiff was eligible for "an increase" on salary.

**34)**     Plaintiff's employment agreement negotiations with Balchem Corporation also made some verbal provisions that should Plaintiff meet key performance objectives and that should Plaintiff develop patented technologies/processes or products, Plaintiff will be rewarded financially with substantial amount of pay bonuses  commensurate with the potential and value of the inventions and that the company will open a laboratory for Plaintiff where Plaintiff will be able to establish himself for the rest of his industry career (See ATTACHMENT VI, [Case 7:17-CV-02810-KMK] ECF Document # 24-3, 92-98 ).

**35)**     The written and verbal negotiations and agreements were reached with former Balchem Corporation's Chief Science Officer named Dr. Bob Dull, with the participation of Renee

7

McComb (Senior manager HR), Bob Miniger (VP of Human Resources), Defendant Oenga (Senior Manager Analytical Laboratory)

**36)** Plaintiff indeed met and/or exceeded key performance objectives during his tenure at Balchem Corporation, including the following as can be summarized or inferred from papers recently filed in this Court by Defendant Balchem Corporation and its Chief Technology Officer Michael Sestrick:

a) " During his tenure with Balchem Corporation, Mr. Kamdem relied on and used his personal intuition and empirical scientific observations and authored work on the creation of encapsulated ingredients ([Case 7:17-CV-02810-KMK] ECF Document # 12, ¶7; [Case 7:17-CV-02810-KMK] ECF Document # 11-7, p. 5, See Section on "PROJECT RESOURCES" Document Filed Under Seal).

b) In spite of the extreme lack of resources at/from Balchem and Balchem Corporation's other scientists, Mr. Kamden developed/created an advanced encapsulation system that Balchem Corporation knows to have the potential to significantly advance Balchem Corporation's competitive position in the animal nutrition market place ([Case 7:17-CV-02810-KMK] ECF Document # 12, ¶9; [Case 7:17-CV-02810-KMK] ECF Document # 11-7).

c) Specifically, during his tenure at Balchem Corporation, Mr. Kamdem created a whole new class of encapsulated nutrients that Balchem Corporation tested and found to be much better than what Balchem Corporation and/or Balchem Corporation's competition currently have on the market ([Case 7:17-CV-02810-KMK] ECF Document # 12, ¶10; [Case 7:17-CV-02810-KMK] ECF Document # 11-7).

d) Balchem Corporation found Mr. Kamden's creation to be worthy of trade secret and/or patent protection to be by Balchem, because Mr. Kamden's creation is of such a nature that

should a competitor get hold of it, the competitor would have an unfair business advantage over Balchem Corporation" ([Case 7:17-CV-02810-KMK] ECF Document # 12, ¶¶11-12; [Case 7:17-CV-02810-KMK] ECF Document # 11-7).

37)    In spite of the fact that Plaintiff had met and exceeded the key performance objectives for which he was hired by Balchem Corporation, not only did Balchem Corporation breached the employment agreement by refusing to provide the increase as stipulated in the written and verbal agreements, but Balchem Corporation's Managers and executives subsequently went as far as libeling and defaming Plaintiff to the New York Division of Human Rights and the EEOC on the dates of 10/10/2016 and 02/26/2018 by writing that "Balchem Corporation Terminated Plaintiff because of "*continued and ongoing performance failures*".

38)     In addition to the above profession-based libel and defamation, Balchem Corporation also libeled and defamed Plaintiff's moral character and work ethics, all of which can now be easily debunked by recent Court filings and Affidavit from Balchem Corporation and from his Chief Technology Officer (See [Case 7:17-CV-02810-KMK] ECF Document # 12).

39)    The Defamation that Balchem Corporation wrote to the New York Division of Human Rights and to the EEOC on the dates of 10/10/2016 and 02/26/2018, falsely accusing Plaintiff of having taken pictures and publicizing sensitive laboratory information.

40)    Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time, Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**41)**     But once Balchem Corporation and its managers/executives discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Balchem then imposed on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**42)**     And upon terminating Plaintiff's employment and severing all ties with Plaintiff, Balchem Corporation claimed ownership of the trade secrets, patentable new encapsulation technology that Plaintiff had conceptualized and proposed to Balchem prior to being deceitfully enticed through Balchem Corporation's misrepresentations to accept a full-time employment offer employment from for the implementation of the New Trade Secrets And Patentable Technology at Balchem.

## 2.     DEFENDANTS

### 1) Balchem Corporation

**43)**     Balchem Corporation is a Food and Pharma company based in New Hampton, New York.

**44)**     Its main business address is 52 Sunrise Park Road, New Hampton, New York, 10958

**45)**     Balchem Corporation and its co-defendants are currently represented in US District Case # 7:17-cv-02810-KMK by the attorneys Michael A. Frankel and Rebecca McCloskey of the Law firm Jackson Lewis P.C. whose offices are at 44 South Broadway, 14th Floor; White Plains, NY 10601. Tel: 1 914 872 8060 and who informed Plaintiff in the past to serve all papers against the defendants through Defendants' attorneys.

**46)**     Balchem specialized in ingredients in the human nutrition and animal nutrition markets.

**47)**     In April 2015, Balchem Corporation hired Plaintiff to do technology innovation work from its R&D facility in New Hampton, NY.

**48)**     At the end of 2014 and beginning 2015, Balchem Corporation was looking for someone to develop new encapsulation technologies other than what it already had.

**49)**     Balchem also expected the person to h2ave Analytical instrumentation experience,

**50)**     Balchem Corporation through its then Chief Science Officer, the late Dr. Bob Dull invited Plaintiff in January 2015 for an informal brainstorming lunch and Plaintiff accepted.

**51)**     During the lunch Plaintiff learned of their concerns and needs and subsequently made several proposals based on his experience in the field of encapsulation and Analytical Sciences.

**52)**     Balchem Corporation then invited Plaintiff for a PowerPoint Presentation with larger group of Balchem Corporation's staff.

**53)**     Plaintiff accepted and the interview took place at Balchem Corporation's headquarter in New Hampton, NY.

**54)**     Balchem Corporation became interested in Plaintiff and requested Plaintiff to fill-out its Employment Application form.

**55)**     Balchem Corporation made representations to Plaintiff personally, on its Application for Employment form, in the employee handbook given to Plaintiff, and also publicly advertised on its website that Balchem Corporation was "*an Equal Opportunity Employer*" and that it would not discriminate against an employee based upon race, color, religion, gender, age, national origin, disability, marital status, sexual orientation, citizenship, victim of domestic violence status, or any other protected classification in accordance with federal and state law.

**56)**     Balchem Corporation also made representations to Plaintiff personally and also publicly advertised on its website that Balchem Corporation was a "*Great Place To Work*" for employees who like Plaintiff "*are passionate about delivering excellence*".

**57)**     Balchem then made an At-Will employment offer to Plaintiff to join the company as an employee to implement technology proposal conceptualized and made by Plaintiff.

**58)**     Relying on the Balchem Corporation's representations that it was "*an Equal Opportunity Employer*" and a "*Great Place To Work*" for employees who like Plaintiff "*are passionate about delivering excellence*", Plaintiff then filled out Balchem Corporation's employment application form and returned the same to Balchem Corporation, first by fax and then by FedEx mail (See [Case 7:17-CV-02810-KMK] ECF Document # 32, pp. 57-84, EXHIBITS 013 to 023).

**59)**     However, Plaintiff countered the Balchem Corporation's initial offer with a request for a provision guarantee increase for Plaintiff if Plaintiff should successfully develop the technology proposals he had made.

**60)**     Upon Further discussions, Plaintiff and Balchem Corporation agreed upon the terms of the guaranteeing increase for Plaintiff and the provision was added to the Balchem Corporation's initial offer as "*Evaluation*" Clause.

**61)**     Plaintiff also requested some money for Relocation and Balchem Corporation agreed.

**62)**     The "*Evaluation*" and "*Relocation*" Clauses agreed upon between Plaintiff and Balchem Corporation were not subject to Balchem Corporation's "At-Will" Disclaimer and accordingly they were added to Balchem Corporation's initial employment offer in computer/electronic arial-narrow-11 font and were typed in red-color.

**63)**     The final document comprising the terms of Balchem Corporation's initial At-Will employment offer and the Not-At-Will clauses Evaluation and Relocation clauses negotiated between Plaintiff and Balchem was renamed "Changes."

**64)**     With regard to Balchem Corporation's representations to Plaintiff that Balchem Corporation was a "*Great Place To Work*" for employees who like Plaintiff "*are passionate about delivering excellence*", the Chief Science Officer ("CSO") made representations, promises to Plaintiff and informed Plaintiff that since Plaintiff was joining the company with a new technology

proposal of his own, Plaintiff will be given his own laboratory should Plaintiff be able to turn the concepts he had proposed into viable commercial technologies and products.

**65)** The CSO also made verbal promises that Plaintiff will be eligible for bonuses commensurate with the potential of commercially viable inventions, new technologies and products thereof should Plaintiff be able to successfully implement the concepts he had presented to Balchem Corporation.

**66)** The CSO informed Plaintiff that the size of the bonuses indicated was to be 25% of the profit potential of the new products and technologies, typical of what is practiced in the academia for professors.

**67)** Balchem encouraged Plaintiff to join the Company as full-time employee and to have faith and trust that Balchem will honor its words.

**68)** Accordingly, Plaintiff joined the company as full-time employee.

**69)** Plaintiff started work in April 2015 and worked at Balchem Corporation's R&D in New Hampton, New York, until he was suddenly terminated for having objected to being subject to discrimination because of his Islam and Muslim religion practices.

**70)** Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "*key performance objectives*", Plaintiff was eligible for "*an increase*" on "*salary*".

**71)** Plaintiff's employment agreement negotiations with Balchem Corporation also made some verbal provisions that should Plaintiff meet key performance objectives and that should Plaintiff develop patented technologies/processes or products, Plaintiff will be rewarded financially with substantial amount of pay bonuses  commensurate with the potential and value of the inventions and that the company will open a laboratory for Plaintiff where Plaintiff will be able to establish himself for the rest of his industry career.

13

**72)**    The written and verbal negotiations and agreements were reached with former Balchem Corporation's Chief Science Officer named Dr. Bob Dull, with the participation of Renee McComb (Senior Manger HR), Bob Miniger (VP of Human Resources), Defendant Oenga (Senior Manager Analytical Laboratory)

**73)**    Plaintiff indeed met key performance objectives during his tenure at Balchem Corporation including doing work that was found by Balchem Corporation to be eligible for trade secret and patent protection (See ([Case 7:17-CV-02810-KMK] ECF Document # 12, ¶7; [Case 7:17-CV-02810-KMK] ECF Document # 11-7, p. 5, See Section on "PROJECT RESOURCES" Document Filed Under Seal).

**74)**    In spite of the fact that Plaintiff met and exceeded the key performance objectives for which he was hired by Balchem Corporation, Balchem Corporation breached the Not-At-Will employment agreement by refusing to provide the increase as stipulated in the written and verbal agreements.

**75)**    Balchem Corporation's Managers and executives subsequently went as far as libeling and defaming Plaintiff to the New York Division of Human Rights and the EEOC on the dates of 10/10/2016 and 02/26/2018 by writing that "*Balchem Corporation Terminated Plaintiff because of continued and ongoing performance failures*".

**76)**    In addition to the above profession-based libel and defamation, Balchem Corporation also libeled and defamed Plaintiff's moral character and work ethics, all of which can now be easily debunked by recent Court filings and Affidavit from Balchem Corporation and from his Chief Technology Officer ((See [Case 7:17-CV-02810-KMK] ECF Document # 12).

**77)**    The Defamation that Balchem Corporation wrote to the New York Division of Human Rights ("NY HRD") and to the Equal Employment Opportunity Commission ("EEOC") on the

dates of 10/10/2016 and 02/26/2018, falsely accused Plaintiff of having taken pictures and publicizing sensitive laboratory information.

**78)**    Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates especially for ruminant Nutrition, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**79)**    But once Balchem Corporation and its managers/executives discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Balchem then imposed on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**80)**    Subsequently acting in their bigotry, dislike, disdain and/or hatred of Plaintiff's Muslim creed, religion, and the hoodie wearing practices/tradition of Plaintiff's Muslim creed/religion, Defendants Oenga, McComb, Sestrick, Miniger, Kuehner, Larsen, and Harris misused and abused of their positions of seniority at Balchem Corporation to lie and to make false reports to Balchem Corporation about Plaintiff's Job performance, and thereby caused Balchem Corporation to refuse/fail to blacklist and to refuse/fail to rehire Plaintiff for open positions at Balchem Corporation.

**81)**    Plaintiff has been unemployed and also applied for jobs including research and development jobs that Balchem Corporation posted on public website looking for the expertise that Plaintiff has or which were opened for the advancement of the inventions that Plaintiff conceptualized and successfully implemented at Balchem before being unlawfully terminated, but Balchem Corporation failed/refused to rehire and did not even call Plaintiff for interview.

**82)**      Balchem Corporation refused/failed to rehire the Plaintiff although the project that Plaintiff developed at Balchem Corporation remains "Active" in Balchem Corporation's project portfolio, even as recently testified under oath by the CTO of Balchem Corporation, namely Mr. Michael Sestrick in and Affidavit filed in the federal Court.

**83)**      Balchem Corporation failed/refused to rehire Plaintiff for work at Balchem Corporation and Balchem because of Plaintiff's Muslim Creed/Religion and because of the Plaintiff's protected activity against Balchem and its co-defendants for their unlawful ban of Plaintiff's Muslim hoodie attire and the termination of the Plaintiff's employment.

### 2) Gideon Nyabuti Oenga aka Gideon Oenga

**84)**      The last information Plaintiff has on Defendant Oenga is that he is an employee of Balchem Corporation, and a senior manager of the Analytical Laboratory at Balchem Corporation in which Plaintiff worked.

**85)**      He was a teacher/professor in the country of Kenya before moving to the United States.

**86)**      He is affiliated with some religious organization, most likely known as Seventh Day.

**87)**      In the country of Kenya where he came from, Mr. Gideon's religion was known to not mingle and give much respect to Muslims and Islam.

**88)**      Balchem Corporation and its co-defendants are currently represented in US District Case # 7:17-cv-02810-KMK by the attorneys Michael A. Frankel and Rebecca McCloskey of the Law firm Jackson Lewis P.C. whose offices are at 44 South Broadway, 14th Floor; White Plains, NY 10601. Tel: 1 914 872 8060 and who informed Plaintiff in the past to serve all papers against the defendants through Defendants' attorneys.

**89)**      During Plaintiff's work at Balchem Corporation, Plaintiff reported to him and regularly communicated his scientific reports to him.

**90)**     Around mid-May 2016, Defendant Oenga called Plaintiff from his Office and told Plaintiff that Plaintiff must no longer wear a hoodie that he was wearing because it was Muslim and that Balchem employees had been coming to him asking him about my religion and did not want to see me wearing Sacred head-covering-hoodie Muslim attire.

**91)**     Plaintiff then requested Defendant Oenga that he should allow Plaintiff to continue to wear his Sacred head-covering-hoodie Muslim attire especially since the Scared Ramadan was approaching.

**92)**     On May 26, 2016 during a one-on-one meeting with Defendant Oenga, Defendant Oenga accused that Plaintiff had been insubordinate saying Plaintiff had continued to wear his Islam Sacred head-covering-hoodie Muslim attire to work.

**93)**     Plaintiff objected to the accusation as discriminatory and informed him that he was going to report to Human Resources ("HR") about it because the accusation was discriminatory.

**94)**     Defendant Oenga then elevated his voice, stood up to open his office's door and shouted to Plaintiff that Plaintiff must take his belongings and go to HR never to return again.

**95)**     Plaintiff then communicated the incident to Human Resources Manager, Renee McComb and to late Dr. Bob Dull, Former Chief Science Officer of Balchem Corporation, and made a complaint of Discrimination based on Plaintiff's religion and creed.

**96)**     Plaintiff felt sick after the incident and was so sick that he went to his physician Dr. Strober and was diagnosed with severe distress resulting from the incidents.

**97)**     Plaintiff was sick for a week and remained home for a week.

**98)**     Balchem Corporation's HR then asked Plaintiff to obtain a Physician report of the diagnosis of his sickness and accordingly Dr. Strober issued one which Plaintiff brought to Balchem Corporation's HR.

**99)**    Balchem Corporation's HR then requested Plaintiff to meet with  HR VP Miniger and during that meeting Plaintiff produced Dr. Strober Report to him.

**100)**    Upon reading Dr. Strober Report, VP Miniger then informed Plaintiff that Balchem was suspending Plaintiff immediately and that Plaintiff needed to go home to wait for a decision.

**101)**    Plaintiff then returned home and the day after Plaintiff was asked to return to Balchem to meet with VP Miniger again.

**102)**    When Plaintiff arrived, Plaintiff met with VP Miniger and VP Miniger presented Plaintiff with a document and said that the document was about Performance Improvements Plan ("PIP") that Plaintiff needed to sign and comply or else Plaintiff will not be allowed to return to work.

**103)**    Plaintiff objected to the document as being retaliatory and false, but Plaintiff consented to signing on any provision of the document that pertained to standard company policy for every employee.

**104)**    The said PIP had a clause banning Plaintiff's Sacred head-covering-hoodie Muslim attire from Balchem Corporation.

**105)**    Present at the meeting was also defendant Oenga, who also signed on the portions of the PIP documents that had been identified as being company standard policy applicable to any employee.

**106)**    On around August 17, 2016,  Plaintiff used his cellphone to take pictures and e-mailed the pictures  to Human Resources to raise objection that Plaintiff's Sacred head-covering-hoodie Muslim attire was banned from the company while others continued to bring and wear their hoodies to work.

**107)**     Defendants then accused Plaintiff around August 18, 2016 that Plaintiff had taken pictures and videos of Balchem Corporation's trade secrets and had publicized them to outside entities.

**108)**    Such a statement was factually false because the Pictures taken were sent only to HR.

**109)**    Upon information and belief, Gideon told Balchem Human Resources that Plaintiff took pictures of a cabinet containing trade secret materials and had divulged them to outside sources.

**110)**    Such a statement was factually false.

**111)**    After Plaintiff started objecting to the ban of his Sacred head-covering-hoodie Muslim attire, Defendant Oenga also reported to Human Resources that Plaintiff had not been able to do the innovation work he was hired to do.

**112)**    Such a representation was factually false because Plaintiff had invented a new encapsulation technology and encapsulates that no other scientist who had worked for Balchem had been able to do.

**113)**    As a matter of fact, Defendant Oenga tested the encapsulated products that Plaintiff developed and found that it the encapsulates were effective and surpassed by far any products of that nature on the marketplace.

**114)**    One of the encapsulated products that Plaintiff developed was Choline Chloride encapsulates.

**115)**    Choline chloride is very difficult to handle because it is very hygroscopic.

**116)**    Plaintiff was able to find and develop an encapsulation technology for Choline Chlorine.

**117)**    Defendant Oenga tested and found in his own tests that the choline chloride that Plaintiff had developed was by far superior to whatever he had seen on the market over his experience in the industry.

**118)**    Plaintiff stored prototypes of his process and product development work in a cabinet that assigned to Plaintiff when he started working at Balchem.

**119)**   Plaintiff also used the said cabinet to store small quantities of newly developed prototypes for shelf life observation over time to monitor the physical change of encapsulated materials.

**120)**   A shelf life observation experience usually includes documenting the appearance of the material by taking pictures/videos.

**121)**   Often times, even at the request of Defendant Oenga, Plaintiff had taken pictures and videos of his experimental set up and product prototypes and had communicated those pictures and videos to Defendant Oenga.

**122)**   Defendant Oenga had on several occasions, shown pictures and videos of Plaintiff's work to senior managers at Balchem Corporation.

**123)**   It was widely known within Balchem Corporation that Plaintiff had successfully brought a new encapsulation technology at Balchem Corporation.

**124)**   Once Plaintiff objected to the ban of his Islam Sacred head-covering-hoodie Muslim attire, Defendant Oenga also claimed at his meetings with senior managers that he was the one who brought the one technology and products thereof.

**125)**   Such a claim was factually false.

**126)**   As a matter of fact, Defendant Oenga was never able to contribute a workable  idea to the entire development work that Plaintiff did to bring forth choline chloride encapsulation technology.

**127)**   Plaintiff asked an attorney for Balchem Corporation whether Balchem Corporation assumed responsibility for Defendant Oenga's employment discrimination actions.

**128)**   The said attorney did not indicate that Balchem was assuming responsibility for Defendant Oenga' employment discrimination actions, therefore Defendant Oenga is sued here in personal capacity as well as in his capacity with Balchem Corporation.

**129)**    Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "key performance objectives", Plaintiff was eligible for "an increase" on "salary" and Defendant Oenga was aware that Plaintiff had met and even exceeded Key Performance Objectives by developing a whole new class of encapsulates, something that no Balchem Corporation's scientist was ever able to do..

**130)**    Plaintiff's employment agreement negotiations with Balchem Corporation also made some verbal provisions that should Plaintiff meet key performance objectives and that should Plaintiff develop patented technologies/processes or products, Plaintiff will be rewarded financially with substantial amount of pay bonuses  commensurate with the potential and value of the inventions and that the company will open a laboratory for Plaintiff where Plaintiff will be able to establish himself for the rest of his industry career.

**131)**    Defendant Oenga was member of the team that interviewed Plaintiff and negotiated the written and verbal terms of employment with Plaintiff.

**132)**    The written and verbal negotiations and agreements were reached with former Balchem Corporation's Chief Science Officer named Dr. Bob Dull, with the participation of Renee McComb (Senior Manger HR), Bob Miniger (VP of Human Resources), Defendant Oenga (Senior Manager Analytical Laboratory)

**133)**    Defendant Oenga knew that Plaintiff indeed met and even exceeded key performance objectives during his tenure at Balchem Corporation, including the following as can be summarized or inferred from papers recently filed in this Court by Defendant Balchem Corporation and its Chief Technology Officer Michael Sestrick (See [Case 7:17-CV-02810-KMK] ECF Document # 12 ; [Case 7:17-CV-02810-KMK] ECF Document # 11-7).

**134)**   Defendant Oenga is one of the Balchem Corporation managers who came together to agree on the libel and the defamation statements to write against Plaintiff to the Regional Director of the Division of Human Rights on 10/06/2016.

**135)**   In addition to the profession-based libel and defamation, Defendant Oenga also agreed with other Balchem Managers to libel and to defame Plaintiff's moral character and work ethics, all of which can now be easily debunked by recent Court filings and Affidavit from Balchem Corporation and from his Chief Technology Officer (See [Case 7:17-CV-02810-KMK] ECF Document # 12).

**136)**   The Defamation that Defendant Oenga took part in wrote to the New York Division of Human Rights and to the EEOC on the dates of 10/10/2016 and 02/26/2018, falsely accused Plaintiff of having taken pictures and publicizing sensitive laboratory information.

**137)**   Defendant Oenga knew that Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time, Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**138)**   But once Defendant Oenga discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Defendant Oenga then advocated and/or supported imposing on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover-up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**139)**   Defendant Oenga is one of the Balchem Corporation managers who authored a "PIP" imposing that Plaintiff's Muslim attire be banned from Balchem Corporation's premises.

**140)** Defendant Oenga also lied to the CEO of Balchem Corporation that Plaintiff had been taking pictures and shooting videos of Company's premises and facilities and publicizing them.

**141)** But when the New York Division of Human Rights asked them to provide evidence of their accusations against Plaintiff, they failed to provide evidence that Plaintiff had done any such thing of which they falsely accused Plaintiff.

**142)** Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates especially for ruminant Nutrition, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**143)** But once Balchem Corporation and its managers/executives discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Balchem then imposed on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**144)** Subsequently acting in their bigotry, dislike, disdain and/or hatred of Plaintiff's Muslim creed, religion, and the hoodie wearing practices/tradition of Plaintiff's Muslim creed/religion, Defendants Oenga McComb, Sestrick, Miniger, Kuehner, Larsen, and Harris misused and abused of their positions of seniority at Balchem Corporation to lie and to make false reports to Balchem Corporation about Plaintiff's Job performance, and thereby caused Balchem Corporation to refuse/fail to blacklist and to refuse/fail to rehire Plaintiff for open positions at Balchem Corporation.

**145)** Plaintiff has been unemployed and also applied for jobs including research and development jobs that Balchem Corporation posted on public website looking for the expertise

that Plaintiff has or which were opened for the advancement of the inventions that Plaintiff conceptualized and successfully implemented at Balchem before being unlawfully terminated, but Balchem Corporation failed/refused to rehire and did not even call Plaintiff for interview.

**146)**    Balchem Corporation refused/failed to rehire the Plaintiff although the project that Plaintiff developed at Balchem Corporation remains "Active" in Balchem Corporation's project portfolio, even as recently testified under oath by the CTO of Balchem Corporation, namely Mr. Michael Sestrick in and Affidavit filed in the federal Court.

**147)**    Balchem Corporation failed/refused to rehire Plaintiff for work at Balchem Corporation and Balchem because of Plaintiff's Muslim Creed/Religion and because of the Plaintiff's protected activity against Balchem and its co-defendants for their unlawful ban of Plaintiff's Muslim hoodie attire and the termination of the Plaintiff's employment.

### 3)  Robert T. Minger aka Bob Miniger

**148)**    The last information Plaintiff has on Bob Miniger is that he is an employee of Balchem Corporation.

**149)**    The last information Plaintiff has on Bob Miniger is that he is a Vice President of Human Resources at Balchem Corporation and also has an executive role within Balchem Corporation.

**150)**    Balchem Corporation and its co-defendants are currently represented in US District Case # 7:17-cv-02810-KMK by the attorneys Michael A. Frankel and Rebecca McCloskey of the Law firm Jackson Lewis P.C. whose offices are at 44 South Broadway, 14th Floor; White Plains, NY 10601. Tel: 1 914 872 8060 and who informed Plaintiff in the past to serve all papers against the defendants through Defendants' attorneys.

**151)**    His participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement Plan after Plaintiff reported the incidents

during which Defendant Oenga ordered that Plaintiff must stop wearing his Islam Sacred head-covering-hoodie Muslim attire do work.

**152)**    He also made the decision to suspend Plaintiff from work after Plaintiff took pictures and submitted to Human Resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company because of Plaintiff's religious practices.

**153)**    He stated during a meeting in his office that he was suspending Plaintiff in order to do due his due diligence whether Plaintiff might have taken more pictures showing evidence Balchem committed employment discrimination.

**154)**    More specifically he intended to order that Plaintiff's laptop be searched and that any such evidence found on plaintiff's laptop be destroyed.

**155)**    He also made the decision to terminate Plaintiff's employment alleging false accusations.

**156)**    He called Plaintiff on 08/22/2016 along with Renee McComb to inform Plaintiff on Plaintiff's smart phone that Plaintiff's employment was terminated.

**157)**    Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "*key performance objectives*", Plaintiff was eligible for "*an increase*" on "*salary*" and Bob Miniger was aware that Plaintiff had met and even exceeded Key Performance Objectives by developing a whole new class of encapsulates, something that no Balchem Corporation's scientist was ever able to do.

**158)**    Plaintiff's employment agreement negotiations with Balchem Corporation also made some verbal provisions that should Plaintiff meet key performance objectives and that should Plaintiff develop patented technologies/processes or products, Plaintiff will be rewarded financially with substantial amount of pay bonuses  commensurate with the potential and value of the inventions

and that the company will open a laboratory for Plaintiff where Plaintiff will be able to establish himself for the rest of his industry career.

**159)**    Bob Miniger was member of the team that interviewed Plaintiff and negotiated the and verbal terms of employment with Plaintiff.

**160)**    The written and verbal negotiations and agreements were reached with former Balchem Corporation's Chief Science Officer named Dr. Bob Dull, with the participation of Renee McComb (Senior Manger HR), Bob Miniger (VP of Human Resources), Defendant Oenga (Senior Manager Analytical Laboratory).

**161)**    Bob Miniger knew that Plaintiff indeed met and even exceeded Key Performance Objectives by developing a whole new class of encapsulates, something that no Balchem Corporation's scientist was ever able to do at Balchem Corporation, nor had any Balchem Competitor done, including the following as can be summarized or inferred from papers recently filed in this Court by Defendant Balchem Corporation and its Chief Technology Officer Michael Sestrick (See [Case 7:17-CV-02810-KMK] ECF Document # 12 ; [Case 7:17-CV-02810-KMK] ECF Document # 11-7).

**162)**    In spite of the fact that Plaintiff had met and exceeded the key performance objectives for which he was hired by Balchem Corporation, not only did Balchem Corporation breached the employment agreement by refusing to provide the increase as stipulated in the written and verbal agreements, but Balchem Corporation's Managers and executives subsequently went as far as libeling and defaming Plaintiff to the New York Division of Human Rights and the EEOC on the dates of 10/10/2016 and 02/26/2018 by writing that *"Balchem Corporation Terminated Plaintiff because of continued and ongoing performance failures"*.

**163)**   Bob Miniger is one of the Balchem Corporation managers who came together to agree on the libel and the defamation statements to write against Plaintiff to the Regional Director of the Division of Human Rights on 10/06/2016.

**164)**   In addition to the profession-based libel and defamation, Bob Miniger also agreed with other Balchem Managers to libel and to defame Plaintiff's moral character and work ethics, all of which can now be easily debunked by recent Court filings and Affidavit from Balchem Corporation and from his Chief Technology Officer (See [Case 7:17-CV-02810-KMK] ECF Document # 12).

**165)**   The Defamation that Bob Miniger took part in wrote to the New York Division of Human Rights and to the EEOC on the dates of 10/10/2016 and 02/26/2018, falsely accused Plaintiff of having taken pictures and publicizing sensitive laboratory information.

**166)**   Bob Miniger knew that Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time, Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**167)**   But once Bob Miniger discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Bob Miniger then advocated and/or supported imposing on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**168)**   Bob Miniger is one of the Balchem Corporation managers who authored a "PIP" imposing that Plaintiff's Muslim attire be banned from Balchem Corporation's premises.

**169)**   Bob Miniger also lied to the CEO of Balchem Corporation that Plaintiff had been taking pictures and shooting videos of Company's premises and facilities and publicizing them.

**170)**   But when the New York Division of Human Rights asked them to provide evidence of their accusations against Plaintiff, they failed to provide evidence that Plaintiff had done any such thing of which they falsely accused Plaintiff.

**171)**   Although the project that Plaintiff developed at Balchem Corporation remained "Active" as testified under oath by Michael Sestrick in an Affidavit filed in the federal Court, Plaintiff has re-applied for work at Balchem Corporation and he has opposed the hiring of Plaintiff.

**172)**   Plaintiff has also applied for other science jobs that Balchem Corporation posted on public website for expertise that Plaintiff has, but he opposed calling Plaintiff for interview and Plaintiff was not even called for interview.

**173)**   Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates especially for ruminant Nutrition, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**174)**   But once Balchem Corporation and its managers/executives discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Balchem then imposed on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**175)**   Subsequently acting in their bigotry, dislike, disdain and/or hatred of Plaintiff's Muslim creed, religion, and the hoodie wearing practices/tradition of Plaintiff's Muslim creed/religion, Defendants Oenga McComb, Sestrick, Miniger, Kuehner, Larsen, and Harris misused and abused

of their positions of seniority at Balchem Corporation to lie and to make false reports to Balchem Corporation about Plaintiff's Job performance, and thereby caused Balchem Corporation to refuse/fail to blacklist and to refuse/fail to rehire Plaintiff for open positions at Balchem Corporation.

**176)** Plaintiff has been unemployed and also applied for jobs including research and development jobs that Balchem Corporation posted on public website looking for the expertise that Plaintiff has or which were opened for the advancement of the inventions that Plaintiff conceptualized and successfully implemented at Balchem before being unlawfully terminated, but Balchem Corporation failed/refused to rehire and did not even call Plaintiff for interview.

**177)** Balchem Corporation refused/failed to rehire the Plaintiff although the project that Plaintiff developed at Balchem Corporation remains "Active" in Balchem Corporation's project portfolio, even as recently testified under oath by the CTO of Balchem Corporation, namely Mr. Michael Sestrick in and Affidavit filed in the federal Court.

**178)** Balchem Corporation failed/refused to rehire Plaintiff for work at Balchem Corporation and Balchem because of Plaintiff's Muslim Creed/Religion and because of the Plaintiff's protected activity against Balchem and its co-defendants for their unlawful ban of Plaintiff's Muslim hoodie attire and the termination of the Plaintiff's employment.

### 4) Renee McComb

**179)** The last information Plaintiff has on Renee McComb is that she is an employee of Balchem Corporation

**180)** Renee McComb is a Senior Manager of Human Resources at Balchem Corporation.

**181)** Balchem Corporation and its co-defendants are currently represented in US District Case # 7:17-cv-02810-KMK by the attorneys Michael A. Frankel and Rebecca McCloskey of the Law firm Jackson Lewis P.C. whose offices are at 44 South Broadway, 14th Floor; White Plains, NY

10601. Tel: 1 914 872 8060 and who informed Plaintiff in the past to serve all papers against the defendants through Defendants' attorneys.

**182)** Plaintiff reported the incidents with Defendant Oenga to her verbally and by e-mail.

**183)** She did not conduct any meaningful investigation of the incidents, rather she tried to find information and to devise cover up.

**184)** Plaintiff also informed her around 08/01/2016 that he was filing an employment discrimination with the Equal Employment Opportunity Commission "EEOC".

**185)** Her additional participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement Plan after Plaintiff reported the incidents during which Defendant Oenga ordered that Plaintiff must stop wearing his Islam Sacred head-covering-hoodie Muslim attire do work.

**186)** She also made the decision to suspend Plaintiff from work after Plaintiff took pictures and submitted to Human resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company.

**187)** She stated that she was suspending Plaintiff in order to investigate whether Plaintiff might have taken more pictures showing evidence of employment discrimination.

**188)** She also made the decision or supported the decision to terminate Plaintiff's employment.

**189)** She called Plaintiff on 08/22/2016 on Plaintiff's smart phone to inform Plaintiff along with Bob Miniger that Plaintiff's employment was terminated.

**190)** Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "*key performance objectives*", Plaintiff was eligible for "*an increase*" on "*salary*" and Renee McComb was aware that Plaintiff had met and even exceeded Key Performance

Objectives by developing a whole new class of encapsulates, something that no Balchem

Corporation's scientist was ever able to do..

**191)**   Plaintiff's employment agreement negotiations with Balchem Corporation also made some

verbal provisions that should Plaintiff meet key performance objectives and that should Plaintiff

develop patented technologies/processes or products, Plaintiff will be rewarded financially with

substantial amount of pay bonuses  commensurate with the potential and value of the inventions

and that the company will open a laboratory for Plaintiff where Plaintiff will be able to establish

himself for the rest of his industry career.

**192)**   Renee McComb was member of the team that interviewed Plaintiff and negotiated the

written and verbal terms of employment with Plaintiff.

**193)**   The written and verbal negotiations and agreements were reached with former Balchem

Corporation's Chief Science Officer named Dr. Bob Dull, with the participation of Renee

McComb (Senior Manger HR), Bob Miniger (VP of Human Resources), Defendant Oenga (Senior

Manager Analytical Laboratory).

**194)**   Renee McComb knew that Plaintiff indeed met and even exceeded key performance

objectives during his tenure at Balchem Corporation, including the following as can be

summarized or inferred from papers recently filed in this Court by Defendant Balchem Corporation

and its Chief Technology Officer Michael Sestrick (See [Case 7:17-CV-02810-KMK] ECF

Document # 12 ; [Case 7:17-CV-02810-KMK] ECF Document # 11-7).

**195)**   In spite of the fact that Plaintiff had met and exceeded the key performance objectives for

which he was hired by Balchem Corporation, not only did Balchem Corporation breached the

employment agreement by refusing to provide the increase as stipulated in the written and verbal

agreements, but Balchem Corporation's Managers and executives subsequently went as far as

libeling and defaming Plaintiff to the New York Division of Human Rights and the EEOC on the dates of 10/10/2016 and 02/26/2018 by writing that "*Balchem Corporation Terminated Plaintiff because of continued and ongoing performance failures*".

**196)**    Renee McComb is one of the Balchem Corporation managers who came together to agree on the libel and the defamation statements to write against Plaintiff to the Regional Director of the Division of Human Rights on 10/06/2016.

**197)**    In addition to the profession-based libel and defamation, Renee McComb also agreed with other Balchem Managers to libel and to defame Plaintiff's moral character and work ethics, all of which can now be easily debunked by recent Court filings and Affidavit from Balchem Corporation and from his Chief Technology Officer (See [Case 7:17-CV-02810-KMK] ECF Document # 12).

**198)**    The Defamation that Renee McComb took part in wrote to the New York Division of Human Rights and to the EEOC on the dates of 10/10/2016 and 02/26/2018, falsely accused Plaintiff of having taken pictures and publicizing sensitive laboratory information.

**199)**    Renee McComb knew that Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time, Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**200)**    But once Renee McComb discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Bob Miniger then advocated and/or supported imposing on Plaintiff a so-called Performance Improvement Plan

"PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**201)**    Renee McComb is one of the Balchem Corporation managers who authored a "PIP" imposing that Plaintiff's Muslim attire be banned from Balchem Corporation's premises.

**202)**    Renee McComb also lied to the CEO of Balchem Corporation that Plaintiff had been taking pictures and shooting videos of Company's premises and facilities and publicizing them.

**203)**    But when the New York Division of Human Rights asked them to provide evidence of their accusations against Plaintiff, they failed to provide evidence that Plaintiff had done any such thing of which they falsely accused Plaintiff.

**204)**    Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates especially for ruminant Nutrition, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**205)**    But once Balchem Corporation and its managers/executives discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Balchem then imposed on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**206)**    Subsequently acting in their bigotry, dislike, disdain and/or hatred of Plaintiff's Muslim creed, religion, and the hoodie wearing practices/tradition of Plaintiff's Muslim creed/religion, Defendants Oenga McComb, Sestrick, Miniger, Kuehner, Larsen, and Harris misused and abused of their positions of seniority at Balchem  Corporation to lie and to make false reports to Balchem Corporation about Plaintiff's Job performance, and thereby caused Balchem Corporation to

refuse/fail to blacklist and to refuse/fail to rehire Plaintiff for open positions at Balchem Corporation.

**207)**   Plaintiff has been unemployed and also applied for jobs including research and development jobs that Balchem Corporation posted on public website looking for the expertise that Plaintiff has or which were opened for the advancement of the inventions that Plaintiff conceptualized and successfully implemented at Balchem before being unlawfully terminated, but Balchem Corporation failed/refused to rehire and did not even call Plaintiff for interview.

**208)**   Balchem Corporation refused/failed to rehire the Plaintiff although the project that Plaintiff developed at Balchem Corporation remains "Active" in Balchem Corporation's project portfolio, even as recently testified under oath by the CTO of Balchem Corporation, namely Mr. Michael Sestrick in and Affidavit filed in the federal Court.

**209)**   Balchem Corporation failed/refused to rehire Plaintiff for work at Balchem Corporation and Balchem because of Plaintiff's Muslim Creed/Religion and because of the Plaintiff's protected activity against Balchem and its co-defendants for their unlawful ban of Plaintiff's Muslim hoodie attire and the termination of the Plaintiff's employment.

### 5)   Theodore Harris aka Ted Harris, CEO, Balchem Corporation

**210)**   The last information Plaintiff has on Defendant Theodore Harris is that he is an employee of Balchem Corporation, working as CEO, executive.

**211)**   Theodore Harris Joined Balchem Corporation shortly after Plaintiff, within two or three months.

**212)**   Balchem Corporation and its co-defendants are currently represented in US District Case # 7:17-cv-02810-KMK by the attorneys Michael A. Frankel and Rebecca McCloskey of the Law firm Jackson Lewis P.C. whose offices are at 44 South Broadway, 14th Floor; White Plains, NY

10601. Tel: 1 914 872 8060 and who informed Plaintiff in the past to serve all papers against the defendants through Defendants' attorneys.

**213)** Plaintiff's complaint and grievances about employment discrimination was reported to him by Balchem Corporation's Human Resources Managers.

**214)** He held several meetings with the Human Resources Managers and with the R&D managers about Plaintiff's complaint of discrimination.

**215)** But he did not conduct or Order any meaningful investigation of the incidents, rather he tried to find information and to devise cover up.

**216)** He was also informed by Balchem Corporation's Human Resources that Plaintiff had filed an employment discrimination with the Equal Employment Opportunity Commission "EEOC" and the New York Division on Human Rights.

**217)** His additional participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement Plan after Plaintiff reported the incidents during which Defendant Oenga ordered that Plaintiff must stop wearing his Islam Sacred head-covering-hoodie Muslim attire do work.

**218)** He also made the decision or supported the to suspend Plaintiff from work after Plaintiff took pictures and submitted to Human resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company.

**219)** He ordered or supported the decision that Plaintiff be suspended from work in order for them to investigate whether Plaintiff might have taken more pictures showing evidence of employment discrimination.

**220)** More specifically he intended to order that Plaintiff's laptop be searched and that any such evidence found on plaintiff's laptop be destroyed.

**221)**   He also made the decision or supported the decision to terminate Plaintiff's employment.

**222)**   He made the decision or supported the decision that Plaintiff be called on his smart phone on 08/22/2016 by with Bob Miniger and Renee McComb to inform Plaintiff that his employment was terminated.

**223)**   Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "*key performance objectives*", Plaintiff was eligible for "*an increase*" on "*salary*" and Theodore Harris was aware that Plaintiff had met and even exceeded Key Performance Objectives by developing a whole new class of encapsulates, something that no Balchem Corporation's scientist was ever able to do.

**224)**   He did not conduct any meaningful investigation of the incidents, rather she tried to find information and to devise cover up.

**225)**   He was also informed that Plaintiff had filed an employment discrimination with the Equal Employment Opportunity Commission "EEOC".

**226)**   His additional participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement Plan after Plaintiff reported the incidents during which Defendant Oenga ordered that Plaintiff must stop wearing his Islam Sacred head-covering-hoodie Muslim attire do work.

**227)**   He also made the decision to suspend or approved the Decision that Plaintiff be suspended from work after Plaintiff took pictures with his smart phone and submitted the same to Human resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company.

**228)**    He ordered or supported the decision that plaintiff must be suspended in order for them to further investigate whether Plaintiff might have taken more pictures showing evidence of employment discrimination.

**229)**    He also Ordered or supported the decision to terminate Plaintiff's employment.

**230)**    He also Ordered or supported the decision to call Plaintiff on 08/22/2016 to inform Bob Miniger and Renee McComb must call Plaintiff on his smart phone to inform Plaintiff that Plaintiff's employment was terminated.

**231)**    Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "key performance objectives", Plaintiff was eligible for "an increase" on "salary" and Theodore Harris was aware that Plaintiff had met and even exceeded Key Performance Objectives by developing a whole new class of encapsulates, something that no Balchem Corporation's scientist was ever able to do..

**232)**    Plaintiff's employment agreement negotiations with Balchem Corporation also made some verbal provisions that should Plaintiff meet key performance objectives and that should Plaintiff develop patented technologies/processes or products, Plaintiff will be rewarded financially with substantial amount of pay bonuses  commensurate with the potential and value of the inventions and that the company will open a laboratory for Plaintiff where Plaintiff will be able to establish himself for the rest of his industry career.

**233)**    The written and verbal negotiations and agreements were reached with former Balchem Corporation's Chief Science Officer named Dr. Bob Dull, with the participation of Renee McComb (Senior Manger HR), Bob Miniger (VP of Human Resources), Defendant Oenga (Senior Manager Analytical Laboratory)

**234)**   Theodore Harris knew that Plaintiff indeed met and even exceeded key performance objectives during his tenure at Balchem Corporation, including the following as can be summarized or inferred from papers recently filed in this Court by Defendant Balchem Corporation and its Chief Technology Officer Michael Sestrick (See [Case 7:17-CV-02810-KMK] ECF Document # 12).

**235)**   In spite of the fact that Plaintiff had met and exceeded the key performance objectives for which he was hired by Balchem Corporation, not only did Balchem Corporation breached the employment agreement by refusing to provide the increase as stipulated in the written and verbal agreements, but Balchem Corporation's Managers and executives subsequently went as far as libeling and defaming Plaintiff to the New York Division of Human Rights and the EEOC on the dates of 10/10/2016 and 02/26/2018 by writing that "Balchem Corporation Terminated Plaintiff because of continued and ongoing performance failures".

**236)**   Theodore Harris is one of the Balchem Corporation managers who came together to agree on the libel and the defamation statements to write against Plaintiff to the Regional Director of the Division of Human Rights on 10/06/2016.

**237)**   In addition to the profession-based libel and defamation, Theodore Harris also agreed with other Balchem Managers to libel and to defame Plaintiff's moral character and work ethics, all of which can now be easily debunked by recent Court filings and Affidavit from Balchem Corporation and from his Chief Technology Officer (See [Case 7:17-CV-02810-KMK] ECF Document # 12).

**238)**   The Defamation that Theodore Harris took part in wrote to the New York Division of Human Rights and to the EEOC on the dates of 10/10/2016 and 02/26/2018, falsely accused Plaintiff of having taken pictures and publicizing sensitive laboratory information.

**239)**   Theodore Harris knew that Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time, Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**240)**   But once Theodore Harris discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Theodore Harris then advocated and/or supported imposing on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**241)**   Theodore Harris is one of the Balchem Corporation managers who authored a "PIP" imposing that Plaintiff's Muslim attire be banned from Balchem Corporation's premises.

**242)**   Theodore Harris also lied to Balchem Corporation that Plaintiff had been taking pictures and shooting videos of Company's premises and facilities and publicizing them.

**243)**   But when the New York Division of Human Rights asked them to provide evidence of their accusations against Plaintiff, they failed to provide evidence that Plaintiff had done any such thing of which they falsely accused Plaintiff.

**244)**   Although the project that Plaintiff developed at Balchem Corporation remained "Active" as testified under oath by Michael Sestrick in an Affidavit filed in the federal Court, Plaintiff has re-applied for work at Balchem Corporation and he has opposed the hiring of Plaintiff.

**245)**   Plaintiff has also applied for other science jobs that Balchem Corporation posted on public website for expertise that Plaintiff has, but he opposed calling Plaintiff for interview and Plaintiff was not even called for interview.

**246)** Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates especially for ruminant Nutrition, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**247)** But once Balchem Corporation and its managers/executives discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Balchem then imposed on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**248)** Subsequently acting in their bigotry, dislike, disdain and/or hatred of Plaintiff's Muslim creed, religion, and the hoodie wearing practices/tradition of Plaintiff's Muslim creed/religion, Defendants Oenga McComb, Sestrick, Miniger, Kuehner, Larsen, and Harris misused and abused of their positions of seniority at Balchem Corporation to lie and to make false reports to Balchem Corporation about Plaintiff's Job performance, and thereby caused Balchem Corporation to refuse/fail to blacklist and to refuse/fail to rehire Plaintiff for open positions at Balchem Corporation.

**249)** Plaintiff has been unemployed and also applied for jobs including research and development jobs that Balchem Corporation posted on public website looking for the expertise that Plaintiff has or which were opened for the advancement of the inventions that Plaintiff conceptualized and successfully implemented at Balchem before being unlawfully terminated, but Balchem Corporation failed/refused to rehire and did not even call Plaintiff for interview.

**250)** Balchem Corporation refused/failed to rehire the Plaintiff although the project that Plaintiff developed at Balchem Corporation remains "Active" in Balchem Corporation's project portfolio,

40

even as recently testified under oath by the CTO of Balchem Corporation, namely Mr. Michael Sestrick in and Affidavit filed in the federal Court.

**251)**    Balchem Corporation failed/refused to rehire Plaintiff for work at Balchem Corporation and Balchem because of Plaintiff's Muslim Creed/Religion and because of the Plaintiff's protected activity against Balchem and its co-defendants for their unlawful ban of Plaintiff's Muslim hoodie attire and the termination of the Plaintiff's employment.

### 6)   John  Kuehner, VP, Balchem Corporation

**252)**    The last information Plaintiff has on Defendant John Kuehner is that he is an employee of Balchem Corporation, working as VP of R&D and Operations.

**253)**    Balchem Corporation and its co-defendants are currently represented in US District Case # 7:17-cv-02810-KMK by the attorneys Michael A. Frankel and Rebecca McCloskey of the Law firm Jackson Lewis P.C. whose offices are at 44 South Broadway, 14th Floor; White Plains, NY 10601. Tel: 1 914 872 8060 and who informed Plaintiff in the past to serve all papers against the defendants through Defendants' attorneys.

**254)**    Plaintiff's complaint and grievances about employment discrimination was reported to him by Balchem Corporation's Human Resources Managers.

**255)**    He held several meetings with the Human Resources  Managers and with the R&D managers about Plaintiff's complaint of discrimination.

**256)**    But he did not conduct or Order any meaningful investigation of the incidents, rather he tried to find information and to devise cover up.

**257)**    He was also informed by Balchem Corporation's Human Resources that Plaintiff had filed an employment discrimination with the Equal Employment Opportunity  Commission "EEOC" and the New York Division on Human Rights.

**258)**    His additional participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement Plan after Plaintiff reported the incidents during which Defendant Oenga ordered that Plaintiff must stop wearing his Islam Sacred head-covering-hoodie Muslim attire do work.

**259)**    He also made the decision or supported the to suspend Plaintiff from work after Plaintiff took pictures and submitted to Human resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company.

**260)**    He ordered or supported the decision that Plaintiff be suspended from work in order for them to investigate whether Plaintiff might have taken more pictures showing evidence of employment discrimination.

**261)**    More specifically he intended to order that Plaintiff's laptop be searched and that any such evidence found on plaintiff's laptop be destroyed.

**262)**    He also made the decision or supported the decision to terminate Plaintiff's employment.

**263)**    He made the decision or supported the decision that Plaintiff be called on his smart phone on 08/22/2016 by with Bob Miniger and Renee McComb to inform Plaintiff that his employment was terminated.

**264)**    Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "*key performance objectives*", Plaintiff was eligible for "*an increase*" on "*salary*" and   John Kuehner was aware that Plaintiff had met and even exceeded Key Performance Objectives by developing a whole new class of encapsulates, something that no Balchem Corporation's scientist was ever able to do.

**265)**    He did not conduct any meaningful investigation of the incidents, rather she tried to find information and to devise cover up.

266)   He was also informed that Plaintiff had filed an employment discrimination with the Equal
Employment Opportunity  Commission "EEOC".

267)   His additional participation in the employment discrimination acts alleged herein included,
approving that Plaintiff be subject to a Performance Improvement Plan after Plaintiff reported the
incidents during which Defendant Oenga ordered that Plaintiff must stop wearing his Islam Sacred
head-covering-hoodie Muslim attire do work.

268)   He also made the decision to suspend or approved the Decision that Plaintiff be suspended
from work after Plaintiff took pictures with his smart phone and submitted the same to Human
resources as evidence that other employees were allowed to bring and wear their hoodies at work,
while Plaintiff's had been banned from the company.

269)   He ordered or supported the decision that plaintiff must be suspended in order for them to
further investigate whether Plaintiff might have taken more pictures showing evidence of
employment discrimination.

270)   More specifically he intended to order that Plaintiff's laptop be searched and that any such
evidence found on plaintiff's laptop be destroyed.

271)   He also Ordered or supported the decision to terminate Plaintiff's employment.

272)   He also Ordered or supported the decision to call Plaintiff on 08/22/2016 to inform Bob
Miniger and Renee McComb must call Plaintiff on his smart phone to inform Plaintiff that
Plaintiff's employment was terminated.

273)   Plaintiff's employment agreement with Balchem Corporation made written provisions that
upon meeting "key performance objectives", Plaintiff was eligible for "an increase" on "salary"
and John Kuehner was aware that Plaintiff had met and even exceeded Key Performance

43

Objectives by developing a whole new class of encapsulates, something that no Balchem Corporation's scientist was ever able to do..

**274)**   Plaintiff's employment agreement negotiations with Balchem Corporation also made some verbal provisions that should Plaintiff meet key performance objectives and that should Plaintiff develop patented technologies/processes or products, Plaintiff will be rewarded financially with substantial amount of pay bonuses  commensurate with the potential and value of the inventions and that the company will open a laboratory for Plaintiff where Plaintiff will be able to establish himself for the rest of his industry career.

**275)**   The written and verbal negotiations and agreements were reached with former Balchem Corporation's Chief Science Officer named Dr. Bob Dull, with the participation of Renee McComb (Senior Manger HR), Bob Miniger (VP of Human Resources), Defendant Oenga (Senior Manager Analytical Laboratory)

**276)**   John Kuehner knew that Plaintiff indeed met and even exceeded key performance objectives during his tenure at Balchem Corporation, including the following as can be summarized or inferred from papers recently filed in this Court by Defendant Balchem Corporation and its Chief Technology Officer Michael Sestrick(See [Case 7:17-CV-02810-KMK] ECF Document # 12 ; [Case 7:17-CV-02810-KMK] ECF Document # 11-7).

**277)**   In spite of the fact that Plaintiff had met and exceeded the key performance objectives for which he was hired by Balchem Corporation, not only did Balchem Corporation breached the employment agreement by refusing to provide the increase as stipulated in the written and verbal agreements, but Balchem Corporation's Managers and executives subsequently went as far as libeling and defaming Plaintiff to the New York Division of Human Rights and the EEOC on the

dates of 10/10/2016 and 02/26/2018 by writing that "Balchem Corporation Terminated Plaintiff because of continued and ongoing performance failures".

**278)** John Kuehner is one of the Balchem Corporation managers who came together to agree on the libel and the defamation statements to write against Plaintiff to the Regional Director of the Division of Human Rights on 10/06/2016.

**279)** In addition to the profession-based libel and defamation, John Kuehner also agreed with other Balchem Managers to libel and to defame Plaintiff's moral character and work ethics, all of which can now be easily debunked by recent Court filings and Affidavit from Balchem Corporation and from his Chief Technology Officer (See [Case 7:17-CV-02810-KMK] ECF Document # 12).

**280)** The Defamation that John Kuehner took part in wrote to the New York Division of Human Rights and to the EEOC on the dates of 10/10/2016 and 02/26/2018, falsely accused Plaintiff of having taken pictures and publicizing sensitive laboratory information.

**281)** John Kuehner knew that Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time, Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**282)** But once John Kuehner discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, John Kuehner then advocated and/or supported imposing on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

45

**283)**   John Kuehner is one of the Balchem Corporation managers who authored a "PIP" imposing that Plaintiff's Muslim attire be banned from Balchem Corporation's premises.

**284)**   John Kuehner also lied to Balchem Corporation and to the CEO of Balchem  Corporation that Plaintiff had been taking pictures and shooting videos of Company's premises and facilities and publicizing them.

**285)**   But when the New York Division of Human Rights asked them to provide evidence of their accusations against Plaintiff, they failed to provide evidence that Plaintiff had done any such thing of which they falsely accused Plaintiff.

**286)**   Although the project that Plaintiff developed at Balchem Corporation remained "Active" as testified under oath by Michael Sestrick in an Affidavit filed in the federal Court, Plaintiff has re-applied for work at Balchem Corporation and he has opposed the hiring of Plaintiff.

**287)**   Plaintiff has also applied for other science jobs that Balchem Corporation posted on public website for expertise that Plaintiff has, but he opposed calling Plaintiff for interview and Plaintiff was not even called for interview.

**288)**   Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates especially for ruminant Nutrition, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**289)**   But once Balchem Corporation and its managers/executives discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Balchem then imposed on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

290)     Subsequently acting in their bigotry, dislike, disdain and/or hatred of Plaintiff's Muslim creed, religion, and the hoodie wearing practices/tradition of Plaintiff's Muslim creed/religion, Defendants Oenga McComb, Sestrick, Miniger, Kuehner, Larsen, and Harris misused and abused of their positions of seniority at Balchem Corporation to lie and to make false reports to Balchem Corporation about Plaintiff's Job performance, and thereby caused Balchem Corporation to refuse/fail to blacklist and to refuse/fail to rehire Plaintiff for open positions at Balchem Corporation.

291)     Plaintiff has been unemployed and also applied for jobs including research and development jobs that Balchem Corporation posted on public website looking for the expertise that Plaintiff has or which were opened for the advancement of the inventions that Plaintiff conceptualized and successfully implemented at Balchem before being unlawfully terminated, but Balchem Corporation failed/refused to rehire and did not even call Plaintiff for interview.

292)     Balchem Corporation refused/failed to rehire the Plaintiff although the project that Plaintiff developed at Balchem Corporation remains "Active" in Balchem Corporation's project portfolio, even as recently testified under oath by the CTO of Balchem Corporation, namely Mr. Michael Sestrick in and Affidavit filed in the federal Court.

293)     Balchem Corporation failed/refused to rehire Plaintiff for work at Balchem Corporation and Balchem because of Plaintiff's Muslim Creed/Religion and because of the Plaintiff's protected activity against Balchem and its co-defendants for their unlawful ban of Plaintiff's Muslim hoodie attire and the termination of the Plaintiff's employment.

### 7)  Travis Larsen

294)     The last information Plaintiff has on Defendant Travis Larsen is that  he is an employee of Balchem Corporation, working in Balchem Corporation's regulatory Group and providing legal counsel internally in the Company

**295)** Balchem Corporation and its co-defendants are currently represented in US District Case # 7:17-cv-02810-KMK by the attorneys Michael A. Frankel and Rebecca McCloskey of the Law firm Jackson Lewis P.C. whose offices are at 44 South Broadway, 14th Floor; White Plains, NY 10601. Tel: 1 914 872 8060 and who informed Plaintiff in the past to serve all papers against the defendants through Defendants' attorneys.

**296)** Plaintiff's complaint and grievances about employment discrimination was reported to him by Balchem Corporation's Human Resources Managers.

**297)** He held several meetings with the Human Resources Managers and with the R&D managers about Plaintiff's complaint of discrimination.

**298)** But he did not conduct or Order any meaningful investigation of the incidents, rather he tried to find information and to devise cover up.

**299)** He was also informed by Balchem Corporation's Human Resources that Plaintiff had filed an employment discrimination with the Equal Employment Opportunity Commission "EEOC" and the New York Division on Human Rights.

**300)** His additional participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement Plan after Plaintiff reported the incidents during which Defendant Oenga ordered that Plaintiff must stop wearing his Islam Sacred head-covering-hoodie Muslim attire do work.

**301)** He also made the decision or supported the to suspend Plaintiff from work after Plaintiff took pictures and submitted to Human resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company.

**302)**   He ordered or supported the decision that Plaintiff be suspended from work in order for them to investigate whether Plaintiff might have taken more pictures showing evidence of employment discrimination.

**303)**   He also made the decision or supported the decision to terminate Plaintiff's employment.

**304)**   He made the decision or supported the decision that Plaintiff be called on his smart phone on 08/22/2016 by with Bob Miniger and Renee McComb to inform Plaintiff that his employment was terminated.

**305)**   Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "*key performance objectives*", Plaintiff was eligible for "*an increase*" on "*salary*" and   John Kuehner was aware that Plaintiff had met and even exceeded Key Performance Objectives by developing a whole new class of encapsulates, something that no Balchem Corporation's scientist was ever able to do..

**306)**   He did not conduct any meaningful investigation of the incidents, rather she tried to find information and to devise cover up.

**307)**   He was also informed that Plaintiff had filed an employment discrimination with the Equal Employment Opportunity Commission "EEOC".

**308)**   His additional participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement Plan after Plaintiff reported the incidents during which Defendant Oenga ordered that Plaintiff must stop wearing his Islam Sacred head-covering-hoodie Muslim attire do work.

**309)**   He also made the decision to suspend or approved the Decision that Plaintiff be suspended from work after Plaintiff took pictures with his smart phone and submitted the same to Human

resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company.

**310)**   He ordered or supported the decision that plaintiff must be suspended in order for them to further investigate whether Plaintiff might have taken more pictures showing evidence of employment discrimination.

**311)**   More specifically he intended to order that Plaintiff's laptop be searched and that any such evidence found on plaintiff's laptop be destroyed.

**312)**   He also Ordered or supported the decision to terminate Plaintiff's employment.

**313)**   He also Ordered or supported the decision to call Plaintiff on 08/22/2016 to inform Bob Miniger and Renee McComb must call Plaintiff on his smart phone to inform Plaintiff that Plaintiff's employment was terminated.

**314)**   Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "key performance objectives", Plaintiff was eligible for "an increase" on "salary" and Travis Larsen was aware that Plaintiff had met and even exceeded Key Performance Objectives by developing a whole new class of encapsulates, something that no Balchem Corporation's scientist was ever able to do..

**315)**   Plaintiff's employment agreement negotiations with Balchem Corporation also made some verbal provisions that should Plaintiff meet key performance objectives and that should Plaintiff develop patented technologies/processes or products, Plaintiff will be rewarded financially with substantial amount of pay bonuses  commensurate with the potential and value of the inventions and that the company will open a laboratory for Plaintiff where Plaintiff will be able to establish himself for the rest of his industry career.

316)    The written and verbal negotiations and agreements were reached with former Balchem

Corporation's Chief Science Officer named Dr. Bob Dull, with the participation of Renee

McComb (Senior Manger HR), Bob Miniger (VP of Human Resources), Defendant Oenga (Senior

Manager Analytical Laboratory)

317)    Travis Larsen knew that Plaintiff indeed met and even exceeded key performance

objectives during his tenure at Balchem Corporation, including the following as can be

summarized or inferred from papers recently filed in this Court by Defendant Balchem Corporation

and its Chief Technology Officer Michael Sestrick (See [Case 7:17-CV-02810-KMK] ECF

Document # 12 ; [Case 7:17-CV-02810-KMK] ECF Document # 11-7):

318)    In spite of the fact that Plaintiff had met and exceeded the key performance objectives for

which he was hired by Balchem Corporation, not only did Balchem Corporation breached the

employment agreement by refusing to provide the increase as stipulated in the written and verbal

agreements, but Balchem Corporation's Managers and executives subsequently went as far as

libeling and defaming Plaintiff to the New York Division of Human Rights and the EEOC on the

dates of 10/10/2016 and 02/26/2018 by writing that "Balchem Corporation Terminated Plaintiff

because of continued and ongoing performance failures".

319)    Travis Larsen is one of the Balchem Corporation managers who came together to agree on

the libel and the defamation statements to write against Plaintiff to the Regional Director of the

Division of Human Rights on 10/06/2016.

320)    In addition to the profession-based libel and defamation, Travis Larsen also agreed with

other Balchem Managers to libel and to defame Plaintiff's moral character and work ethics, all of

which can now be easily debunked by recent Court filings and Affidavit from Balchem

Corporation and from his Chief Technology Officer (See [Case 7:17-CV-02810-KMK] ECF Document # 12).

**321)**    The Defamation that Travis Larsen took part in wrote to the New York Division of Human Rights and to the EEOC on the dates of 10/10/2016 and 02/26/2018, falsely accused Plaintiff of having taken pictures and publicizing sensitive laboratory information.

**322)**    Travis Larsen knew that Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time, Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**323)**    But once Travis Larsen discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Travis Larsen then advocated and/or supported imposing on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**324)**    Travis Larsen is one of the Balchem Corporation managers who authored a "PIP" imposing that Plaintiff's Muslim attire be banned from Balchem Corporation's premises.

**325)**    Travis Larsen also lied to Balchem Corporation and to the CEO of Balchem Corporation that Plaintiff had been taking pictures and shooting videos of Company's premises and facilities and publicizing them.

**326)**    But when the New York Division of Human Rights asked them to provide evidence of their accusations against Plaintiff, they failed to provide evidence that Plaintiff had done any such thing of which they falsely accused Plaintiff.

**327)** Although the project that Plaintiff developed at Balchem Corporation remained "Active" as testified under oath by Michael Sestrick in an Affidavit filed in the federal Court, Plaintiff has re-applied for work at Balchem Corporation and he has opposed the hiring of Plaintiff.

**328)** Plaintiff has also applied for other science jobs that Balchem Corporation posted on public website for expertise that Plaintiff has, but he opposed calling Plaintiff for interview and Plaintiff was not even called for interview.

**329)** Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates especially for ruminant Nutrition, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**330)** But once Balchem Corporation and its managers/executives discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Balchem then imposed on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**331)** Subsequently acting in their bigotry, dislike, disdain and/or hatred of Plaintiff's Muslim creed, religion, and the hoodie wearing practices/tradition of Plaintiff's Muslim creed/religion, Defendants Oenga McComb, Sestrick, Miniger, Kuehner, Larsen, and Harris misused and abused of their positions of seniority at Balchem Corporation to lie and to make false reports to Balchem Corporation about Plaintiff's Job performance, and thereby caused Balchem Corporation to refuse/fail to blacklist and to refuse/fail to rehire Plaintiff for open positions at Balchem Corporation.

**332)**   Plaintiff has been unemployed and also applied for jobs including research and development jobs that Balchem Corporation posted on public website looking for the expertise that Plaintiff has or which were opened for the advancement of the inventions that Plaintiff conceptualized and successfully implemented at Balchem before being unlawfully terminated, but Balchem Corporation failed/refused to rehire and did not even call Plaintiff for interview.

**333)**   Balchem Corporation refused/failed to rehire the Plaintiff although the project that Plaintiff developed at Balchem Corporation remains "Active" in Balchem Corporation's project portfolio, even as recently testified under oath by the CTO of Balchem Corporation, namely Mr. Michael Sestrick in and Affidavit filed in the federal Court.

**334)**   Balchem Corporation failed/refused to rehire Plaintiff for work at Balchem Corporation and Balchem because of Plaintiff's Muslim Creed/Religion and because of the Plaintiff's protected activity against Balchem and its co-defendants for their unlawful ban of Plaintiff's Muslim hoodie attire and the termination of the Plaintiff's employment.

### A.  Michael Sestrick, Chief Technology Officer ("CTO"), Balchem Corporation

**335)**   The last information Plaintiff has on Defendant Michael Sestrick is that he is an employee of Balchem Corporation, working as Chief Technology Officer, ("CTO").

**336)**   This complaint will be served on him at 52 Sunrise Park Road, New Hampton, New York, 10958.

**337)**   Plaintiff's complaint and grievances about employment discrimination was reported to him by Balchem Corporation's Human Resources Managers.

**338)**   He held several meetings with the Human Resources Managers and with the R&D managers about Plaintiff's complaint of discrimination.

**339)**   But he did not conduct or Order any meaningful investigation of the incidents, rather he tried to find information and to devise cover up.

**340)**   He was also informed by Balchem Corporation's Human Resources that Plaintiff had filed an employment discrimination with the Equal Employment Opportunity Commission "EEOC" and the New York Division on Human Rights.

**341)**   His additional participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement Plan after Plaintiff reported the incidents during which Defendant Oenga ordered that Plaintiff must stop wearing his Islam Sacred head-covering-hoodie Muslim attire do work.

**342)**   He also made the decision or supported the to suspend Plaintiff from work after Plaintiff took pictures and submitted to Human resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company.

**343)**   He ordered or supported the decision that Plaintiff be suspended from work in order for them to investigate whether Plaintiff might have taken more pictures showing evidence of employment discrimination.

**344)**   More specifically he intended to order that Plaintiff's laptop be searched and that any such evidence found on plaintiff's laptop be destroyed.

**345)**   He also made the decision or supported the decision to terminate Plaintiff's employment.

**346)**   He made the decision or supported the decision that Plaintiff be called on his smart phone on 08/22/2016 by with Bob Miniger and Renee McComb to inform Plaintiff that his employment was terminated.

347)     Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "*key performance objectives*", Plaintiff was eligible for "*an increase*" on "*salary*" and  Michael Sestrick has been aware that Plaintiff had met Key Performance Objectives.

348)     He did not conduct any meaningful investigation of the incidents, rather she tried to find information and to devise cover up.

349)     He was also informed that Plaintiff had filed an employment discrimination with the Equal Employment Opportunity  Commission "EEOC".

350)     His additional participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement Plan after Plaintiff reported the incidents during which Defendant Oenga ordered that Plaintiff must stop wearing his Islam Sacred head-covering-hoodie Muslim attire do work.

351)     He also made the decision to suspend or approved the Decision that Plaintiff be suspended from work after Plaintiff took pictures with his smart phone and submitted the same to Human resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company.

352)     He ordered or supported the decision that plaintiff must be suspended in order for them to further investigate whether Plaintiff might have taken more pictures showing evidence of employment discrimination.

353)     He also Ordered or supported the decision to terminate Plaintiff's employment.

354)     He also Ordered or supported the decision to call Plaintiff on 08/22/2016 to inform Bob Miniger and Renee McComb must call Plaintiff on his smart phone to inform Plaintiff that Plaintiff's employment was terminated.

355)    Plaintiff's employment agreement with Balchem Corporation made written provisions that upon meeting "key performance objectives", Plaintiff was eligible for "an increase" on "salary" and Michael Sestrick was aware that Plaintiff had met and even exceeded Key Performance Objectives by developing a whole new class of encapsulates, something that no Balchem Corporation's scientist was ever able to do.

356)    Plaintiff's employment agreement negotiations with Balchem Corporation also made some verbal provisions that should Plaintiff meet key performance objectives and that should Plaintiff develop patented technologies/processes or products, Plaintiff will be rewarded financially with substantial amount of pay bonuses  commensurate with the potential and value of the inventions and that the company will open a laboratory for Plaintiff where Plaintiff will be able to establish himself for the rest of his industry career.

357)    The written and verbal negotiations and agreements were reached with former Balchem Corporation's Chief Science Officer named Dr. Bob Dull, with the participation of Renee McComb (Senior Manger HR), Bob Miniger (VP of Human Resources), Defendant Oenga (Senior Manager Analytical Laboratory)

358)    Michael Sestrick knew that Plaintiff indeed met and even exceeded key performance objectives during his tenure at Balchem Corporation, including the following as can be summarized or inferred from papers recently filed in this Court by Defendant Balchem Corporation and its Chief Technology Officer Michael Sestrick(See [Case 7:17-CV-02810-KMK] ECF Document # 12 ; [Case 7:17-CV-02810-KMK] ECF Document # 11-7):

359)    In spite of the fact that Plaintiff had met and exceeded the key performance objectives for which he was hired by Balchem Corporation, not only did Balchem Corporation breached the employment agreement by refusing to provide the increase as stipulated in the written and verbal

agreements, but Balchem Corporation's Managers and executives subsequently went as far as libeling and defaming Plaintiff to the New York Division of Human Rights and the EEOC on the dates of 10/10/2016 and 02/26/2018 by writing that "Balchem Corporation Terminated Plaintiff because of continued and ongoing performance failures".

**360)**   Michael Sestrick is one of the Balchem Corporation managers who came together to agree on the libel and the defamation statements to write against Plaintiff to the Regional Director of the Division of Human Rights on 10/06/2016.

**361)**   In addition to the profession-based libel and defamation, Michael Sestrick also agreed with other Balchem Managers to libel and to defame Plaintiff's moral character and work ethics, all of which can now be easily debunked by recent Court filings and Affidavit from Balchem Corporation and from his Chief Technology Officer (See [Case 7:17-CV-02810-KMK] ECF Document # 12).

**362)**   The Defamation that Michael Sestrick took part in wrote to the New York Division of Human Rights and to the EEOC on the dates of 10/10/2016 and 02/26/2018, falsely accused Plaintiff of having taken pictures and publicizing sensitive laboratory information.

**363)**   Michael Sestrick knew that Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time, Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**364)**   But once Michael Sestrick discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious practices, Michael Sestrick then advocated and/or supported imposing on Plaintiff a so-called Performance Improvement Plan

"PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

**365)**    Michael Sestrick is one of the Balchem Corporation managers who authored a "PIP" imposing that Plaintiff's Muslim attire be banned from Balchem Corporation's premises.

**366)**    Michael Sestrick also lied to Balchem Corporation and to the CEO of Balchem Corporation that Plaintiff had been taking pictures and shooting videos of Company's premises and facilities and publicizing them.

**367)**    But when the New York Division of Human Rights asked them to provide evidence of their accusations against Plaintiff, they failed to provide evidence that Plaintiff had done any such thing of which they falsely accused Plaintiff.

**368)**    Although the project that Plaintiff developed at Balchem Corporation remained "Active" as testified under oath by Michael Sestrick in an Affidavit filed in the federal Court, Plaintiff has re-applied for work at Balchem Corporation and he has opposed the hiring of Plaintiff.

**369)**    Plaintiff has also applied for other science jobs that Balchem Corporation posted on public website for expertise that Plaintiff has, but he opposed calling Plaintiff for interview and Plaintiff was not even called for interview.

**370)**    Although Balchem Corporation had spent millions of dollars of money for decades on efforts by its on scientific staff and on consultants to develop novel encapsulates especially for ruminant Nutrition, Balchem remained unsuccessful until Plaintiff brought the skills and the technical know-how and in a relatively short time Plaintiff showed Balchem Corporation how to make new encapsulates and taught Balchem Scientists the same skills.

**371)**    But once Balchem Corporation and its managers/executives discovered that Plaintiff had Muslim religious Practices, and that Plaintiff had no intention of abandoning his Muslim religious

practices, Balchem then imposed on Plaintiff a so-called Performance Improvement Plan "PIP" as a cover up to terminate Plaintiff's employment and to breach Plaintiff's employment agreement.

372)    Subsequently acting in their bigotry, dislike, disdain and/or hatred of Plaintiff's Muslim creed, religion, and the hoodie wearing practices/tradition of Plaintiff's Muslim creed/religion, Defendants Oenga McComb, Sestrick, Miniger, Kuehner, Larsen, and Harris misused and abused of their positions of seniority at Balchem  Corporation to lie and to make false reports to Balchem Corporation about Plaintiff's Job performance, and thereby caused Balchem Corporation to refuse/fail to blacklist and to refuse/fail to rehire Plaintiff for open positions at Balchem Corporation.

373)    Plaintiff has been unemployed and also applied for jobs including research and development jobs that Balchem Corporation posted on public website looking for the expertise that Plaintiff has or which were opened for the advancement of the inventions that Plaintiff conceptualized and successfully implemented at Balchem before being unlawfully terminated, but Balchem Corporation failed/refused to rehire and did not even call Plaintiff for interview.

374)    Balchem Corporation refused/failed to rehire the Plaintiff although the project that Plaintiff developed at Balchem Corporation remains "Active" in Balchem Corporation's project portfolio, even as recently testified under oath by the CTO of Balchem Corporation, namely Mr. Michael Sestrick in and Affidavit filed in the federal Court.

375)    Balchem Corporation failed/refused to rehire Plaintiff for work at Balchem Corporation and Balchem because of Plaintiff's Muslim Creed/Religion and because of the Plaintiff's protected activity against Balchem and its co-defendants for their unlawful ban of Plaintiff's Muslim hoodie attire and the termination of the Plaintiff's employment.

## I.    SHORT AND PLAIN STATEMENT PURSUANT TO THE FED. CIV. PROC. RULE 8(a)(1), OF THE GROUNDS FOR THE COURT'S FEDERAL QUESTION JURISDICTION OVER THE CLAIM OR OVER THE ACTION AND PROCEDURAL HISTORY AT NEW YORK DIVISION OF HUMAN RIGHTS ("NY DHR") AND AT THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC")

376)    This action arises under the Equal Employment Opportunity Act Title VII of the Civil Rights Act of 1964, as amended.

377)    On or around the month of May of 2016, as the beginning of the month Scared Ramadan approached, Plaintiff had been wearing a Sacred head-covering-hoodie Muslim attire to the laboratory where he worked in New Hampton New York.

378)    One day around mid-May 2016, at about noon time, the laboratory Manager Defendant Oenga, then called Plaintiff from his Office and said to Plaintiff that Plaintiff must stop wearing his Sacred head-covering-hoodie Muslim attire to work because nobody at Balchem liked to see it.

379)    Plaintiff was surprise and shocked by defendant Oenga but did not make a big issue of the statement, however Plaintiff continue to wear his Sacred head-covering-hoodie Muslim attire.

380)    About two weeks later, on or about May 26, 2016, Plaintiff was savagely outrageously physically harassed and attacked Plaintiff causing a severe emotional  and mental shock and reaction  during a one-on-one weekly meeting in Defendant Oenga' Office for having continued to wear his Sacred head-covering-hoodie Muslim attire.

381)    Plaintiff then communicated the incident to Human Resources Manager, Renee McComb and to late Dr. Bob Dull, Former Chief Science Officer of Balchem Corporation, and made a complaint of Discrimination based on Plaintiff's religion and creed.

382)    Plaintiff felt sick after the incident and was so sick that he went to his physician Dr. Strober and was diagnosed with severe distress resulting from the incidents.

**383)**   Plaintiff was sick for a week and remained home for a week.

**384)**   Balchem Corporation's HR then asked Plaintiff to obtain a Physician report of the diagnosis of his sickness and accordingly Dr. Strober issued one which Plaintiff brought to Balchem Corporation's HR.

**385)**   Balchem Corporation's HR then requested Plaintiff to meet with  HR VP Miniger and during that meeting Plaintiff produced Dr. Strober Report to him.

**386)**   Upon reading Dr. Strober Report, VP Miniger then informed Plaintiff that Balchem was suspending Plaintiff immediately and that Plaintiff needed to go home to wait for a decision.

**387)**   Plaintiff then returned home and the day after Plaintiff was asked to return to Balchem to meet with VP Miniger again.

**388)**   Present at the meeting was also defendant Oenga, who also signed on the portions of the PIP documents that had been identified as being company standard policy applicable to any employee.

**389)**   Plaintiff then was required by the VP of HR Bob Miniger, along with the R&D Managers to sign a Performance Improvement Plan and to stop wearing his Sacred head-covering-hoodie Muslim attire to work or else Plaintiff will not be allowed to return to work and will be terminated immediately.

**390)**   Plaintiff objected to the said Performance Improvement Plan as they contained several factually false statements against Plaintiff and also mandated the ban of Plaintiff's Sacred head-covering-hoodie Muslim attire allegedly because they perceived Plaintiff's Muslim's hoodie and the manner of wearing the hoodie as unprofessional.

**391)**   However, plaintiff consented to signing on any requirement of the PIP that reflected company's code of conduct.